CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* ROBINSON & COMPANY.

Opinion delivered October 17, 1927.

1. CARRIERS—SUFFICIENCY OF EVIDENCE OF NEGLIGENCE.—In a suit by a shipper against the carrier to recover damages to an interstate shipment of potatoes resulting from delay in transit, evidence of carrier's negligence *held* sufficient to go to the jury.

2. CARRIERS—NOTICE OF CLAIM AS CONDITION PRECEDENT.—In a shipper's suit against the carrier to recover damages to an interstate shipment of potatoes, resulting from the carrier's negligence in transit, no notice of the claim or filing of such claim was required as a condition precedent to recovery, but the shipper must prove negligence to recover.

3. Carriers—Notice of Claim for Damages.—Under the act of Congress regulating interstate shipments, where the giving of a notice of claim is required, such notice is a condition precedent to recovery, but in such case plaintiff need not prove negligence or fault on the part of the carrier, since he is an insurer.

4. Carriers—Burden of Proving Negligence.—In a shipper's suit against the carrier to recover damages for negligence in transporting an interstate shipment of potatoes, the burden of proving negligence was on the shipper. so that an instruction that the initial carrier is an insurer, and liable for all damages, except as result from fault of shipper of goods, or the act of God, or public enemy, was erroneous as permitting recovery without negligence.

5. Courts—Conclusiveness of Federal Decisions.—State courts, in construing the act of Congress regulating interstate shipments, are governed by the construction placed on the act by the United States Supreme Court.

6. Pleading—Interstate Shipper—Evidence as to Market Value.—In a shipper's action against a carrier to recover damages to an interstate shipment resulting from the carrier's negligence, it was within the discretion of the court to admit testimony as to its market value, and to permit the complaint to be amended to include an allegation as to a decline in the market.

7. Appeal and Error—Right to Complain of Surprise.—Defendant on appeal cannot complain of an amendment of the complaint as taking it by surprise, when it failed to request a postponement of trial in order to secure new evidence.

Appeal from Sebastian Circuit Court, Greenwood District; *John E. Tatum,* Judge; reversed.

*Thos. S. Buzbee* and *Geo. B. Pugh,* for appellant.

*Roy Gean,* for appellee.

Mehaffy, J. The plaintiff, appellee here, brought suit against the appellant in the Sebastian Circuit Court, alleging that, on or about the 24th day of June, 1924, appellees delivered to appellant's station agent at Abbott, Arkansas, two carloads of Irish potatoes to be shipped in interstate commerce to Holman Produce Company, St. Louis, Missouri. That, at the time they were delivered for shipment, they were in good, sound and first-class condition and quality, but, when delivered at St. Louis, they were decayed and had to be sold at a loss, and that the damage occurred by reason of delay in transit.

Defendant answered, denying the material allega-tions of the complaint.

S. L. Robinson, one of the partners of Robinson & Company, testified that, in June, 1924, he inspected the two cars of potatoes in question at Abbott, Arkansas. Did not look at all of them. This was while they were being loaded. Mr. Fulgium had grown the potatoes, and Rob-inson said that they had bought them from him. That he was not present when the bills of lading were issued. The potatoes were loaded in stock-cars, the kind of cars that plaintiffs usually ship in. They were good potatoes, and, if transported in the usual method and manner to St. Louis, they should have arrived there in good con-dition. Did not know where they were to be shipped when inspection was made. That he knows nothing about their condition in St. Louis. Witness had full authority to represent Robinson & Company. After the inspec-tion witness left, and they afterwards bought the potatoes by telephone. He gave Mr. Fulgium no instructions. They told the agent that the potatoes would have to go by Hulbert. That was the usual and customary route for shipping potatoes from that point.

J. G. Fulgium testified, in substance, that he lived at Abbott, Arkansas; was a grower of potatoes, and loaded the two cars in question. That they were sound and in good condition, and thinks that there was nothing about the potatoes that would prevent them being shipped to St. Louis if properly handled. That he had the bill of lading issued, and signed it. Does not know what time of day on the 24th they finished loading, and does not know what time the potatoes left Abbott. Had shipped potatoes to St. Louis before, and they were shipped by way of Hulbert and the Frisco over the Rock Island. Sold the potatoes over the telephone and was directed by Mr. Robinson to ship them out. June 24th is about the time they wind up the summer crop of potatoes. That he does not know the people to whom the potatoes were shipped. Just directed to ship them to Holman Produce Company at St. Louis. The potatoes were taken to the station in sacks. They were plowed up that day

and sacked in the field. The sacks were hauled to the station in wagons, twenty to thirty sacks in each load. Witness thinks they had one car loaded and another one started when Mr. Robinson left. Had shipped potatoes in stock-cars before. They are not exposed to the sun to amount to anything, and would not be while standing in the railroad yards, as there would be other cars by the side of them. Most of the time it takes three days and sometimes it takes four to go to Chicago. Has seen potatoes in Chicago that came through all right over the Rock Island. Potatoes will keep three or four days without damage. They were all right when loaded on the 24th and ought to have been all right on the 28th. That is not too long to keep them in the cars.

Lem Robinson, recalled, testified that potatoes in the condition these were should remain in good condition for three or four days. But they will not remain in good condition if permitted to stand in the heat without moving.

Sid L. Robinson testified, in substance, that he had had experience in shipping fruit and produce, and kept up with the approximate running time of various trains from one place to another. The customary time used in carrying a shipment of potatoes from Abbott, Arkansas, to St. Louis, Mo., over the Rock Island by way of Hulbert and the Frisco, is thirty-six hours. Cars arrived at St. Louis Saturday morning. That he saw the cars there Sunday morning. The wholesale markets are open at twelve o'clock at night and close by early morning—something like seven or eight o'clock. This was carload stuff, to be handled on the wholesale market. If the cars arrived at St. Louis at seven or eight or ten o'clock Saturday morning it would be too late for the Saturday market. Potatoes in good condition were worth around $2.50 to $2.75 to $3 per hundredweight Saturday morning. That he examined the potatoes, and they showed they had been out too long and shrunk a good deal, and there were a few spots on the sacks where rotten potatoes had wet the sacks. He testified that he did not authorize any carrier or agent to hold these cars for

orders. They were sold to Holman Produce Company, and were rejected on account of their condition. That he went to St. Louis and sold them to the Holman Produce Company. Made the best disposition possible. The potatoes in their damaged condition were worth about $1.90. Loss on one car was $232.78, on the other $234.37. It was necessary to sort the potatoes. Mr. Keys sold these potatoes to the same man he had shipped them to. That was done after he had had his loss, and it had to be done to get them accepted. The difference between the price at which he bought them and what he paid represented the damage. If the potatoes had not been damaged, one car would have been worth $623.26, and he got for that car $486.40. The other car would have been worth $614.92, and in its damaged condition its fair market was $480.70.

He also testified that he does not know how long it takes to get a car from Abbott, Arkansas, to Booneville. Does not know what time the train ran nor what time the cars were loaded. Bill of lading was dated the 24th, but the cars could have gone out on the 25th and not been damaged. He opened some of the sacks at St. Louis. Thinks it was Monday when he first saw them, and they were still in the cars. That they had sold the potatoes to Holman Produce Company as good potatoes, and agreed on the price by wire. May have sent a wire. The Holman Produce Company refused to accept the draft. He could have taken the potatoes without paying the draft, but he did not do so. That they were trying to dispose of the potatoes to the best advantage. They were damaged some between Saturday and Sunday, and the longer they would stay the worse they would get. It is usual to ship potatoes in cattle-cars, and potatoes shipped in cattle cars ought to keep three or four days. Ought to keep four days if you keep them moving. Shipped these potatoes on the theory that they would be in St. Louis on the second morning after they were shipped. Never authorized anybody to hold cars for orders. The carrier is supposed to make delivery or notify the shipper. Was not notified by the railroad

company. Went to, St. Louis after. receiving a wire from Holman or Keys. Does not know what condition the potatoes were in on their arrival in St. Louis. Did not see them Saturday, and did not know when they left Abbott. Knows they were damaged from decay Monday morning, and knows that if cars are left on the track and not moving they will decay.

H. G. Snyder, general agent of the Frisco Railroad, testified about the movement of the cars, and several witnesses testified for the defendant as to the movement of the cars, but it is unnecessary to set out their testimony.

Appellant's first contention is that there was not sufficient evidence to justify the court in submitting the case to the jury, and that the court should have given a peremptory instruction for the appellant. We do not agree with the appellant in this contention. We think there was sufficient evidence of negligence to require the submission of the case to the jury. These shipments, however, were interstate shipments, and the plaintiff alleged in this complaint that the damages resulted from delay in transit.

This court said in a recent case, decided on May 16, 1927, in speaking of the provisions of the bill of lading: "Where the plaintiff brings suit under the proviso and alleges negligence on the part of the carrier in transit, the burden of proof is upon him to prove negligence alleged." *St. Louis-San Francisco Ry. Co.* v. *Rouw Co.*, 174 Ark. 1, 294 S. W. 414.

This court said in another recent opinion: "This is an interstate shipment, and the law, as declared by the Supreme Court of the United States, must govern." *St. Louis-San Francisco Ry. Co.* v. *Cole,* 174 Ark. 10, 294 S. W. 359.

In each of the above cases the case of *Barrett, Pres. of Adams Express Co.,* v. *Van Pelt,* 268 U. S. 85, 45 S. Ct. 437, 69 L. ed. 857, decided by the United States Supreme Court April 13, 1925, was discussd and relied on as controlling in suits involving interstate shipments. The

United States Supreme Court, in discussing the act of Congress, among other things said:

"It will be noted that both the Cummins Amendment and the bill of lading provision make a double classification of claims, to-wit, (1) those for loss due to decay or damage while being loaded or unloaded or damaged in transit, which we will call transit claims; and (2), those for loss otherwise sustained, which we will call non-transit claims. The Cummins Amendment permitted the carrier to require, as a condition precedent to recovery, the filing of a non-transit claim within four months, and in such cases, to require suit to be instituted within two years. In the case of transit claims it forbade the carrier to require the filing of a claim as a condition precedent to recovery, but authorized a requirement that suit be instituted within two years." * * * It must be assumed that Congress intended to make the classification on a reasonable basis, having regard to considerations deemed sufficient to justify exceptions to the rule. The element of carelessness or negligence is important." *Barrett* v. *Van Pelt,* 268 U. S. 85, 45 S. Ct. 437, 69 L. ed. 857.

The Supreme Court in the above case also called attention to the proviso, which is as follows: "Provided, however, that if the loss, damage or injury complained of was due to delay or damage while being loaded or unloaded or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery. * * * We hold that the second clause must be read as above indicated, that carelessness or negligence is an element in each case of loss, damage or injury included therein, and that, in such cases, carriers are not permitted to require notice of claim or filing of claim as a condition precedent to recovery."

So in this case there was no notice required. Plaintiff in this case does not rely on any damage or injury due to delay or damage while being loaded or unloaded, but he relies solely on damage in transit by carelessness or negligence.

Under the act of Congress regulating interstate shipments in the cases that require notice, the giving of the notice is a condition precedent to recovery. But in those cases the plaintiff, having given notice, does not have to prove any negligence or fault on the part of the carrier. The carrier is an insurer. But in this case, as it is alleged that the damage was caused by the delay in transit, no notice is required, but the right of recovery depends upon negligence.

As we have already said, we think the evidence sufficient on the question of negligence to entitle plaintiff to have the question of negligence submitted to the jury, and for that reason appellant's peremptory instruction was not proper. But, since this action is based on negligence, and the burden is upon the plaintiff to prove negligence, it follows that plaintiff's instruction number one was erroneous. That instruction reads as follows:

"You are instructed that the initial carrier of freight in interstate commerce is an insurer of the goods, wares or merchandise delivered to, and accepted by, such carrier for shipment, and as such insurer is liable to the shipper for all damage or decay occurring to such goods, wares or merchandise while being transported by such carrier, except such damage or decay as results from the fault of the shipper, the inherent nature of the goods shipped, an act of God, or the public enemy."

This instruction would permit a recovery without any negligence. And, since we hold that the action is based on negligence, and negligence must be proved, we think that, instead of giving that instruction, the court should have instructed the jury that the plaintiff would have to show that the injury or damage was the result of the negligence of the carrier.

We deem it unnecessary to set out the other instructions because, from the view we take of this case, it is one based entirely on negligence of the carrier. We are governed by the construction of the act of Congress by the United States Supreme Court, and that court holds that, in cases like the one at bar, no notice is required.

but that the plaintiff must prove negligence in order to recover.

The appellant also contends that the court erred in permitting plaintiff to introduce evidence of market value. It was within the discretion of the court to permit this testimony, and permit the complaint to be amended so as to include an allegation as to the decline in the market. If defendant was taken by surprise and unable at the time to meet this new evidence as to damage, it would have had a right to have a postponement of the trial until it could be prepared to meet it, but this it did not ask and it cannot now complain of the introduction of this testimony. Before one can complain of the introduction of testimony on the ground that it was without opportunity to take testimony or prepare its defense on that issue, one must ask the court for a postponement for that purpose.

It is unnecessary to discuss the other questions argued in briefs of counsel, and, for the errors above mentioned, the case will be reversed and remanded for a new trial.