Missouri Pacific Railroad Company v. Bell.

Opinion delivered March 24, 1924.

1. CARRIERS—FROZEN POTATOES—PRESUMPTION OF NEGLIGENCE.— Proof of delivery of a carload of sweet potatoes to the carrier in good condition and that they were frozen on arrival at destination, where they were first inspected, raises a presumption of negligence justifying recovery, in the absence of explanation.

2. CARRIERS—THROUGH CONTRACT OF SHIPMENT.—A carrier accepting goods for shipment to a point on another line in another State is conclusively treated as having made a through contract.

3. CARRIERS—DUTY OF INITIAL CARRIER.—The initial carrier, having accepted goods in good condition to be shipped to a point on another line, is charged with the duty of delivering them in the same condition or explaining why they could not do so, since it has the better means, and often the only means, of making such proof.

4. CARRIERS—DAMAGE TO SHIPMENT—EVIDENCE.—In an action against an initial carrier for injury to sweet potatoes frozen in transit, evidence *held* to sustain a verdict for shipper.

5. TRIAL—WEIGHT OF EVIDENCE—PROVINCE OF JURY.—Where evidence as to a question of fact was conflicting, it was within the jury's province to believe the plaintiff's witnesses, and to draw all legitimate inferences from their testimony.

6. Carriers—instruction as to measure of damages.—In an action for injury to a carload of sweet potatoes frozen in transit, an instruction stating the measure of damages as the difference between what they sold for at destination and what they would have sold for if undamaged, with 6 per cent. interest from date of arrival to present time, properly stated the law, and was not prejudicial where the proof showed that they were badly damaged in transit, and that the damage awarded was much less than would have been justified.

Appeal from Howard Circuit Court; *B. E. Isbell,* Judge; affirmed.

### STATEMENT OF FACTS.

Appellees sued appellant to recover damages to a car of sweet potatoes, which were allowed to freeze while being transported by appellant as a common carrier.

According to the evidence for appellees, J. W. C. Bell Jr. delivered to the Missouri Pacific Railroad Company at Nashville, Arkansas, 622 bushels of sweet potatoes consigned to Fruit Supply Company, St. Louis, Mo. The potatoes were freshly dug, and were shipped in a standard ventilation car. The potatoes were delivered to the railroad company on Nov. 6, 1920, and arrived at St. Louis at 9:20 o'clock P. M. on Nov. 10, 1920. The consignee was notified of the arrival of the car by United States mail on the next day. The car was placed for unloading on the team track on Nov. 12, 1920, at 2:30 P. M. Instructions were received diverting the shipment to Welch & Welch, Chicago, Ill. The car of sweet potatoes was delivered to them on Nov. 20, 1920, and an inspection of the car on that day showed that the potatoes on the bottom tier and at the end of the car had been frozen. The consignees sorted out the rotten potatoes, and sold the balance of them to the best advantage possible. They realized $250.69 out of all the potatoes, and the market value of them on the day they arrived in Chicago, if they had been in good condition, was $2.25 per bushel. The consignee at St. Louis had 48 hours after it was notified of the arrival of the potatoes within which to unload the same.

The maximum and minimum temperatures in St. Louis from November 10 to November 18, 1920, were as follows:

Nov. 10, 1920, maximum 43, minimum 32
Nov. 11, 1920,       ''     39,     ''     23
Nov. 12, 1920,       ''     29,     ''     19
Nov. 13, 1920,       ''     31,     ''     19
Nov. 14, 1920,       ''     39,     ''     25
Nov. 15, 1920,       ''     36,     ''     26
Nov. 16, 1920,       ''     38,     ''     34
Nov. 17, 1920,       ''     45,     ''     24
Nov. 18, 1920,       ''     63,     ''     36.

According to the evidence for the appellees, the potatoes had never been frozen when they were delivered to the railroad company at Nashville, Ark., for shipment, but when they arrived at Chicago, Ill., they were badly frozen.

J. W. C. Bell Jr. duly assigned his claim for damages to the American Fruit Growers, Inc.

According to the evidence for the appellant, the potatoes were shipped in a car which had standard ventilation, and the car was kept closed during the whole period the potatoes were in transit.

Other facts will be stated or referred to in the opinion.

The jury returned a verdict in favor of the appellees against appellant in the sum of $624.06. The case is here on appeal.

*E. B. Kinsworthy* and *R. E. Wiley,* for appellant.

The court erred in instructing the jury on the burden of proof. 195 Pac. 109; 203 Mo. App. 100; 138 Fed. 997; Elliott on Railroads, § 1516; 174 S. W. 714; 241 U. S. 319, 60 L. ed. 1022; 240 U. S. 34; 60 L. ed. 511; 249 U. S. 186; 63 L. ed. 552; 108 Ark. 115: 12 Howard 272; 13 L. ed. 985: 11 Wallace 129: 20 L. ed. 160; 10 Wallace 176; 19 L. ed. 909: 222 N. T. 198; 118 N. E. 625; 116 Atl. 245; 110 N. W. 897; 240 U. S. 632; 60 L. ed. 632; 77 Ark 482; 52 Ark. 26; 64 Ark. 115. The court erred in instructing

the jury on the measure of damages and admitting testimony on the measure of damages.

W. P. Feazel, for appellee.

Common carriers of merchandise are insurers of the property carried by them and are liable for every loss or damage occurring to it, unless it was caused by the act of God, the public enemy, or by the shipper.  118 Ark. 398; 117 Ark. 451; 150 Ark. 312; 100 Ark. 269; 21 Wall. 1; 12 Wall. 262; 21 How. 7.  The burden of proof was upon the carrier to show that the loss or damage arose from a cause other than its negligence and for which it was not responsible.  1 Black 156; 22 How. 491; 21 Wall. 230; 12 How. 272.  The measure of damages is the difference between what the potatoes would have sold for, if they had reached their destination in a sound and merchantable condition, and what they did sell for in their damaged condition.  129 Ark. 316; 147 Ark. 109.

Hart, J., (after stating the facts).  It was the contention of the railroad company that it furnished a car with standard ventilation and kept it closed in the proper manner during the whole period while the potatoes were in its charge for transportation.  Hence it contends that the freezing of the potatoes was caused by the act of God, or the inherent nature of the goods shipped.

Counsel for appellant then earnestly insist that the court erred in instructing the jury that the burden of proof in these respects was upon appellant.

We cannot agree with counsel in this contention. According to the evidence for the appellees, the potatoes had not been frozen at the time they were delivered to the carrier for shipment, and were in good condition. They were badly frozen when they arrived at their destination in Chicago, which was the first time they had been inspected from the time they had been delivered to the railroad company for transportation.  If no explanation whatever is given as to how the injury occurred, a presumption of negligence arises as a matter of fact, which is sufficient to justify a recovery in cases where there is no other proof than that of the delivery

of the goods to the carrier in good condition, and their arrival at the point of destination in a damaged condition.

Whenever the carrier accepts goods for shipment to a point on another line in another State it is conclusively treated as having been made a through contract. The burden of proof that the damage to the goods in transit resulted from some cause for which the initial carrier was not responsible, in law or by contract, is upon the carrier. The carrier and its agents, having received possession of the goods in good condition, were charged with the duty of delivering them in the same condition, or explaining why they could not do so. The reason is that the carrier not only has the better means, but often the only means, of making such proof. *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Wallace,* 223 U. S. 481; *Chicago & E. I. R. Co.* v. *Collins Co.,* 248 U. S. 186; *St. L. I. M. & S. R. Co.* v. *Pape,* 100 Ark. 269; and *Chicago, R. I. & Pac. Ry. Co.* v. *Walker,* 147 Ark. 109.

Counsel for appellant also objects to an instruction given at the request of appellees, submitting the negligence of appellant to the jury. But we do not deem it necessary to set the instruction out, for the reason that the objection to it is based mainly upon an alleged lack of evidence to support it. In other words, it is claimed that the testimony for appellant overcomes any *prima facie* case made by appellees. We cannot agree with counsel in this contention. It is true that the testimony for appellant tends to show that it furnished a car with standard ventilation, and that it was closed in such a way that the sweet potatoes could not have frozen while the car was in the possession of the carrier for transportation; but this testimony can not be said to be undisputed. According to the evidence of appellees, the sweet potatoes were delivered to the carrier at Nashville on the 6th day of November, 1920, and had not been frozen up to that time. They had only been dug a few days prior to their shipment, and the weather was such that they could not have been frozen while lying in the

field after they were dug. The car was placed for unloading on the team track in St. Louis on November 12. On that day the thermometer was down to 19 degrees, and on the next day the temperature was the same. The jury might have inferred that the potatoes were frozen during these two days.

It is true that appellant introduced testimony tending to show that the car was kept closed on these two days, and that the potatoes would not have frozen while the car was kept closed in the proper way. The jury, however, might not have believed the witnesses in this respect. The potatoes were badly frozen when they arrived in Chicago, and it is evident that all the witnesses cannot be telling the truth about the matter. It is the theory of appellant that the potatoes had become frosted before they were shipped, and they were not frozen during the course of their transportation while in the hands of the carriers. The fact was that they were frozen, and it was within the peculiar province of the jury to believe the witnesses for appellees and to draw all legitimate inferences from their testimony. Therefore we are of the opinion that the evidence for appellees, if believed by the jury, was sufficient to warrant a verdict in their favor. In this connection it may be stated that the court submitted to the jury, in an appropriate instruction, the theory of the appellant.

Counsel for appellant assign as error the action of the court in giving instruction No. 5 on the measure of damages. The instruction reads as follows: ''If you find for the plaintiffs in this case you will assess their damages at such a sum as you find from the evidence would be the difference between what the potatoes sold for in Chicago and what they would have sold for on that market if they had reached there in a sound and undamaged condition, with 6 per cent. interest thereon from date of arrival to present time.''

We do not think any prejudice resulted to appellant from the giving of this instruction. According to the testimony of the consignees at Chicago, Ill., the market

value of sweet potatoes in good condition on the day the sweet potatoes in question arrived there was $2.25 per bushel. There were 611 bushels in the car. The potatoes were so badly damaged by freezing that they had to be rehandled. Four hundred and eight hampers of them had to be dumped. The consignees sold the balance to the best advantage possible, and were only able to realize $250.69 out of them.

This was the only testimony introduced on the measure of damages. The verdict of the jury was for $624.06, which was a much less amount than they might have found in favor of appellees. The instruction, when considered in connection with the proof introduced, was in accordance with the principles of law laid down by this court in other cases. *Chicago, R. I. & P. Ry. Co.* v. *Burkholder & Tuggle,* 129 Ark. 316, and *Chicago, R. I. & P. Ry. Co.* v. *Walker,* 147 Ark. 109.

It follows that the judgment must be affirmed.