St. Louis-San Francisco Railway Company v. Cole.

Opinion delivered May 16, 1927.

1. Carriers—sufficiency of evidence of negligence.—In an action against the carrier for damages resulting from negligence in an interstate shipment of peaches, evidence *held* to make an issue for the jury on the ground of the carrier's negligence in failing to keep the car refrigerated.

2. Carriers—delay in delivery of shipment.—Although delay in the delivery of peaches after arrival of car was on account of the absence of the bill of lading, the carrier in possession was required to exercise ordinary care to see that they were iced in order to preserve them as far as possible.

3. Commerce—conclusiveness of federal decisions.—The law as declared by the United States Court governs in determining the rights and liabilities under an interstate shipment.

4. Carriers—action for damages—limitation.—Where an action is brought against the delivering carrier for damages within three months after date of an alleged loss, this is a substantial compliance with a contract requiring claims for loss to be made in writing to the original or delivering carrier within six months after delivery.

5. CARRIERS—PRESUMPTION OF NEGLIGENCE.—In an action against a carrier for damages resulting from negligence in transporting a shipment of peaches, the shipper made out a *prima facie* case of negligence by showing that the peaches were received by the carrier in sound condition and were damaged on delivery to the consignee.

6. APPEAL AND ERROR.—INVITED ERROR.—Appellant can not complain of conflicting instructions where the conflict resulted from the court giving instructions requested by appellant.

7. APPEAL AND ERROR—HARMLESS ERROR.—Appellant was not prejudiced by the fact that the court erred in placing the burden of proof on appellee.

Appeal from Crawford Circuit Court; *James Cochran*, Judge; affirmed.

*E. T. Miller* and *Warner, Hardin & Warner,* for appellant.

*D. H. Howell,* for appellee.

WOOD, J. This is action by the plaintiff, Cole, against the defendant railway company to recover damages in the sum of $409.19, which plaintiff alleged he sustained on a carload of peaches shipped by him on July 25, 1925, from Highland, Arkansas, via Prescott & Northwestern Railroad Company and Missouri Pacific Railway Company, consigned to the plaintiff at Kansas City, Missouri, and diverted by him to George Floyd at Ellsworth, Kansas, over the defendant railway. The plaintiff alleged that the injury and damage to the peaches were caused by the negligence of the defendant in not keeping the car properly refrigerated in which the peaches were being transported. The defendant answered, and denied the allegations of negligence on the part of itself or its connecting carriers, and alleged, by way of affirmative defense, that, if the peaches were damaged, it was caused by the failure on the part of the plaintiff to properly load, brace and pack same. For further defense it was alleged that, under the contract of shipment, claims for loss, damage or injury must be made in writing within six months after delivery of the shipment. That this was a condition precedent for recovery under the contract, and that plaintiff had failed to comply with the

same; and, for further defense, that the damage, if any, was caused from inherent defects and infirmities of the peaches.

The plaintiff introduced testimony tending to prove that the peaches were delivered to the Prescott & Northwestern Railway Company at Highland, Arkansas, shipped under the name of Bert Johnson Orchard Company, billed to T. O. Cole at Kansas City, and diverted from there to George Floyd at Ellsworth, Kansas. The car arrived at its destination over the defendant railway on July 31, about seven o'clock A. M., and was called for by plaintiff about nine o'clock A. M. Cole's agent handling the car at Ellsworth asked permission of the defendant's agent at that place to let him unload the car. The car had been sold to three merchants at $2.50 per bushel delivered. The defendant's agent refused to let Cole's agent unload the car, saying that he had to have a bill of lading or a written order from the shipper. Cole's agent offered to pay the freight, and wired Cole to instruct the defendant's agent at Ellsworth to release the car. The car was released at six o'clock P. M. on July 31. It was found that the bracing had been shaken loose and 24 baskets of the peaches had been spilled. The top layer and the second layer were moulded, caused from getting warm after being under refrigeration. Plaintiff's agent sold the car in that condition, after paying the freight, for $360.78. If the peaches had been in good condition they would have brought $1,005. The loss on the car was $409.19. The peaches were properly iced at first, and were damaged because, somewhere along the route, the ice had melted, and the car had not been re-iced. It was shown that the peaches, when delivered to the railroad for shipment, were what is designated as a commercial or standard pack-ones, twos and threes, all in firstclass condition, sound in every respect. On the bill of lading was the following notation: "Delivered only on written order of Patterson Orchard Company, sales agent, without surrender bill of lading."

The witness who stated, over the objection of appellant, the condition of the peaches as to decay, and, in his opinion, the cause thereof, had had five years' experience in handling peaches, and, during that time, had handled 100 cars. When this witness was permitted finally to enter the car at Ellsworth, Kansas, he found about one-half the bunker full of ice. The freight bill was introduced, which showed that the peaches had been consigned to the plaintiff's agent, George Floyd, at Ellsworth, Kansas, and it had a notation made on the same by the defendant's delivering agent, as follows: "Car received in very bad condition. Peaches badly molded, braces in car loose at one end. Looked as if some gone. Thirty-six baskets total loss—others badly damaged."

Plaintiff's agent was permitted to testify, over the objection of appellant, that he was allowed to enter the car at six P. M. without producing a written order or bill of lading.

There was testimony on behalf of the appellant to the effect that, on July 28, the time the car was turned over to the appellant, appellant's agent at Kansas City inspected the same and found the temperature to be 45 degrees at the top and 46 degrees at bottom. Peaches firm to ripe, decay two to five per cent., brown rot, fifty to seventy-five per cent. blemishes; 75 to 100 per cent. curculio, or insect stains, and no whiskers. There was also testimony by the defendant tending to prove that the assistant cashier and divergent clerk of the Missouri Pacific Railway, who handled this car at Kansas City, carried out the orders given by him to divert the car to the Frisco. He had had eighteen years' experience in the railroad service. The bill of lading is a contract of shipment. The original is presented on the arrival of the goods, and is the authority for delivery. The way-bill is made from the bill of lading, and travels with the car, carried by the conductor. On the arrival at destination the way-bill is delivered to the depot agent, and then to the consignee. The depot agent does not receive the bill of lading until the consignee brings it to him.

The court instructed the jury, and we will refer to these instructions later. The jury returned a verdict in favor of the plaintiff in the sum of $200. Judgment was entered in plaintiff's favor for that sum, from which is this appeal.

1. The appellant first contends that there is no evidence to establish negligence on the part of the appellant. We cannot concur in this view of learned counsel for the appellant. The salient features of the evidence bearing on this issue are set forth above. The testimony of the appellant's own witness, Evers, who inspected the car when it arrived at Kansas City over the Missouri Pacific Railway, between nine and ten o'clock A. M. on July 28, was to the effect that, when he went into the car, the ice bunkers were full of ice; the fruit was firm to ripe. He stated that it contained some blemishes, describing the same, but said that there were no whiskers. The jury might have found that there was no unnecessary or unusual delay in the diversion of the car from the Missouri Pacific Railway to the appellant. The appellant therefore had possession of the car from about 1:40 P. M. on July 28 to about seven A. M. on July 31, a period of something more than two days. The testimony of appellee's agent to whom the peaches were consigned at Ellsworth, Kansas, and who had had large experience in handling shipments of this character, was to the effect that, when he was permitted to enter the car at six o'clock P. M. on the day of its arrival at Ellsworth, he found the peaches badly decayed, and that the peaches were properly iced at first, and that, somewhere along the line, they had not been re-iced, and the ice had melted until there was only half a bunker of ice, which was too low. He further stated that a twelve-hour delay in re-icing the car would have made the condition worse. The testimony was sufficient to warrant the jury in finding that the car was properly iced when appellant received the same at Kansas City and that the appellant neglected to re-ice the same while the car was in its possession, and

that because of this neglect the peaches were found in a decayed condition when appellee's agent obtained possession thereof at Ellsworth, Kansas. Even if it be conceded that there was delay in delivering the peaches to the appellee's agent after the arrival of the car because of the absence of a bill of lading, nevertheless during this delay the appellant was still in possession of the peaches and it was its duty to exercise ordinary care to see that they were properly iced in order to preserve them as far as possible. It was a question of fact for the jury under the evidence as to whether or not the appellant was negligent in handling the peaches. It occurs to us that this question was not a matter of presumption, but the affirmative testimony tended to prove that the appellant was negligent.

2. The contract of shipment provides as follows: "Claims for loss, damage or injury to property must be made in writing to the originating or delivering carrier or carriers issuing this bill of lading within six months after delivery of the property, * * *; provided, that if such loss, damage or injury was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim or filing of claim shall be required as a condition precedent to recovery." The appellant alleged that the plaintiff failed to comply with this provision of the contract and pleaded such failure as a defense to the action.

Among other instructions on this issue, the court at the instance of the appellant told the jury in instruction No. 12 that the burden was on the plaintiff to prove that claim for loss, damage or injury to the peaches was made in writing to the Prescott & Northwestern Railway Company or the defendant within six months after the delivery of said peaches to the consignee at Ellsworth, and if the plaintiff failed to prove that such written notice was given, the defendant was not liable unless the jury found that it was negligent in failing to ice the car during the time defendant was in possession thereof, and the burden

of proving such negligence, if any, by a preponderance of the evidence was on the plaintiff.

The court also instructed the jury on this issue, in instruction No. 5, that the burden was on the plaintiff to prove by a preponderance of the evidence that the peaches were delivered to the initial carrier in good condition and of the kind and quality susceptible of transportation without damage en route if the transportation was handled without negligence on the part of the carriers, and, if the plaintiff failed to prove this fact by a preponderance of the evidence, the defendant was not liable.

The court also, at the instance of the appellee, in its instructions numbered 2 and 3, in effect told the jury that, if it believed from a preponderance of the evidence that the peaches were in a good, sound condition at the time they were received by the appellant for shipment, and were in a damaged condition at the time they were delivered to the consignee at Ellsworth, Kansas, plaintiff had made out a *prima facie* case against the defendant, and the burden was on the defendant to show that the damaged condition of the peaches did not result from any negligence on the part of the defendant.

This is an interstate shipment, and the law as declared by the Supreme Court of the United States must govern. In one of its most recent pronouncements upon the subject the Supreme Court of the United States, among other things, said:

"We think that, by the use of the words 'carelessness or negligence,' it was intended to relieve the shipper from the necessity of making written proof of claim when, and only when, the damage was due to the carrier's actual negligent conduct, and that by carelessness or negligence is meant not a rule of liability without fault, but negligence in fact. * * * There is no language in the statute from which a purpose may be inferred to vary or limit the common-law rules governing proof of negligence as a fact in issue, and the shipper may follow these rules when he seeks to show that no notice of claim

was necessary. The respondent therefore had the burden of proving the carrier's negligence as one of the facts essential to recovery." *C. & O. Ry. Co.* v. *Thompson Mfg. Co.,* 270 U. S. 422, 46 S. Ct. 320.; *Barrett* v. *Van Pelt,* 268 U. S. 85, 45 S. Ct. 437; see also *Davis* v. *Roper Lbr. Co.,* 269 U. S. 158, 46 S. Ct. 28. ⁻ On the theory that there was no compliance with the contract in regard to the filing of the written claim for loss, damage or injury, as we have already seen, there was positive, affirmative, proof to justify the jury in finding that the appellant was negligent in handling the peaches, and, if that were the only theory, the court would have ruled correctly in granting appellant's prayers for instructions Nos. 12 and 5, *supra.*

But, on the other hand, if the requirements of the law and contract in regard to giving notice in writing of claims for loss, damage or injury to property have been complied with, then the court ruled correctly in instructing the jury as it did in granting appellee's prayers for instructions Nos. 2 and 3, *supra.* The bill of lading required that the claim for loss or damage or injury to the property must be made in writing to the delivering carrier or carriers issuing this bill of lading within six months after delivery of the property. In *St. Louis-San Francisco Ry. Co.* v. *Keller,* 90 Ark. 308, 119 S. W. 254, we said:

"The object of the conditions of this character, it is said, is to enable the carrier, while the occurrence is recent, to better inform himself of what the actual facts occasioning the loss or injury were, and thus protect himself against claims which might be made upon him after such a lapse of time as to frequently make it difficult, if not impossible, for him to ascertain the truth."

This action was begun by the appellee against the appellant on October 22, 1925. That was within less than three months after the alleged loss and damage to the appellee by the appellant occurred. The appellee's complaint certainly set forth in writing its claim for the loss and the damage sustained by him with sufficient

certainty to precisely advise the appellant of the nature of his claim. The appellant was summoned at once, and therefore notified in a definite way of the claim appellee was making, and, after being thus served with notice of appellee's action, a period of more than five months intervened before the cause was brought to trial, during which period the appellant had ample opportunity to make all the investigation necessary or that could have been reasonably desired to ascertain the truth connected with the claim and to shape its course with reference thereto. This is all that the provision of the law and the contract under review contemplate.. We hold therefore that the appellee complied with his contract in regard to making the written notice for claim of loss, damage, or injury to his property. Such being the case, it follows that, when appellee introduced evidence to show delivery of the shipment to the carrier in good condition and its delivery to the consignee in bad condition, the petitioner became subject to the rule applicable to all bailees, that such evidence makes out a *prima facie* case of negligence. The effect of appellee's evidence was to make a *prima facie* case for the jury. See *C. & O. Ry. Co.* v. *Thompson Mfg. Co., supra*, pages 422-423, and cases there cited; also the case of *H. Rouw* v. *St. L. S. F. Ry. Co., ante.* p. 1, and other Arkansas cases there cited.

Having granted appellee's prayers for instructions Nos. 2 and 3, to be sure the court should not have granted the appellant's prayers for instructions Nos. 5 and 12, because the latter prayers were in conflict with the former and made the charge of the court on the burden of proof as to negligence inconsistent and contradictory; however, appellant is not in an attitude to complain of the ruling of the court in granting its prayers for instructions Nos. 5 and 12. Appellee's prayers for instructions Nos. 2 and 3 were correct, and appellant cannot claim that to be a reversible error which it invited the court to make by granting its prayers Nos. 5 and 12. Appellant

certainly was not prejudiced because the court erred in placing the burden to prove negligence on the appellee.

There is no reversible error in the record, and the judgment is therefore affirmed.