RAILWAY EXPRESS AGENCY, INC., *v.* S. L. ROBINSON & COMPANY.

Opinion delivered November 16, 1931.

*A. M. Hartung* and *Warner & Warner,* for appellant.
*D. H. Howell,* for appellee.

HART, C. J. Appellant, Railway Express Agency, Inc., prosecutes this appeal to reverse a judgment for $339.50, in favor of appellee, S. L. Robinson & Company, for damages sustained to an interstate shipment of strawberries.

In the original complaint, it is alleged that the negligence of the carrier consisted in failure to furnish the shipper with a properly constructed and equipped refrigerator car in which to ship the berries and the failure to properly ice it in transit. Counsel for appellees claim that they amended their complaint and relied solely on liability for loss by negligence of the carrier as at common law. Inasmuch as we have reached the conclusion that the carrier has overcome the *prima facie* case made by the shipper, we shall treat the complaint as amended as contended for by appellees.

On May 11, 1929, appellees delivered to appellant at Roland, Oklahoma, a station on its railroad twelve miles from Van Buren, Arkansas, 457 crates of strawberries, consigned to themselves at Kansas City, Missouri. Two hundred and forty-seven crates of the berries were loaded in the car on May 10th, and 210 crates were loaded in the car on May 11th. On the 15th day of May, 1929, the shipper diverted the car from Kansas City to A. H. Welch, Chicago, Illinois.

According to the testimony of A. H. Welch, he was notified of the arrival of the car and inspected it on May 16, 1929. He did not make any written report of the inspection, but his recollection is that he inspected it on the team track of the railroad and found the berries in poor condition. Many of them were bruised, but he could not state what caused this.

The amount of damage to the shipment of berries was also proved by appellees. This proof made a *prima facie* case in favor of the shipper against the carrier, and cast the burden upon it to show that damages did not result from any cause for which it was responsible by law or by contract.

The reason the burden of proof changes from the shipper to the carrier when the former has proved deliv-

ery in good condition to the carrier and failure to redeliver in good condition is, that during transit the goods are no longer subject to the shipper's supervision or observation and are solely in the care of the carrier. The carrier has the better means, and frequently the only means, of showing whether there was any negligence in its handling of the berries. The employees of the carrier are with the goods during the whole time they are under its charge, both by day and by night. The rule is well settled and requires no further discussion. *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Wallace,* 223 U. S. 481, 32 S. Ct. 205; *St. L. I. M. & So. Ry. Co.* v. *Cunningham Commission Co.,* 125 Ark. 577, 188 S. W. 1177; *Missouri Pac. Rd. Co.* v. *Bell,* 163 Ark. 284, 259 S. W. 745; *H. Rouw Co.* v. *St. L. S. F. Ry. Co.,* 172 Ark. 881, 290 S. W. 936; and *C. R. I. & P. Ry. Co.* v. *Robinson & Co.,* 175 Ark. 35, 298 S. W. 873.

We are of the opinion that the *prima facie* case so made by appellee, which raised a presumption of negligence against the carrier, was completely overcome by the evidence introduced by the latter. The evidence introduced by the carrier to overcome the *prima facie* case for negligence against it is very voluminous and cannot be set out in detail within the compass of this opinion. We have carefully considered it, however, and shall attempt to set out the substance of it.

The carrier did not content itself with introducing witnesses as to the general condition of the shipment of strawberries while in its hands, but introduced all persons employed by it who had part in the different transactions during transit. We do not mean that all the operatives of the train were introduced as witnesses, but we do mean that the carrier followed the shipment step by step from the place of shipment to the place of delivery. It was shown by competent evidence that a refrigerator car of the most approved type was furnished the shipper within which to carry the berries. The condition of the car and its material, both as to its equipment and construction, were detailed by the witnesses.

It was shown that the carrier had a sufficient number of stations along the route for re-icing the car and that the car was properly inspected and well iced at all these stations. The evidence shows that the car of strawberries was in good condition at all these points. The car was diverted by the shipper from Kansas City, Missouri, to Chicago, Illinois. As soon as it arrived at its destination, the consignee was notified. An examination of the berries was made when they arrived at their destination, and they were found to be full ripe and watery. None of the crates were broken or damaged.

One inspector testified that the berries contained brown rot which is a disease of berries known as botrytis. This exists from water-soaked berries, causing a dry and leathery rot. Botrytis in these berries originated from the berries getting water-soaked, forming a dry leathery rot. This resulted from the inherent nature and infirmities of the berries. Another inspector testified that brown rot, called botrytis, is an inherent field disease. The condition existed when the berries were loaded, although it might not then be visible. The berries could be infected with that disease and on inspection at the loading point be accepted as number one berries because the disease might not be sufficiently developed to be noticed. Leather rot is an advanced stage of the disease when the skin gets hard. It is an advanced stage of botrytis. The water-soaked condition of the berries indicated that they were handled shortly after a rain and encountered rain during the ripening period. This hastened maturity, but the berries could still be graded as number one at the loading point, since it would take time to show the effect of the disease. Too much water causes the calyx to get dark or black. Refrigeration in express cars would tend to retard ripening, but, if the berries are diseased, refrigeration will not stop the disease. If the berries are water-soaked, refrigeration will not remedy it. The inspectors expressed the opinion that the berries in question possessed the inherent disease at the time they were loaded in the car.

The testimony of the witnesses for the appellant was reasonable and consistent in itself, and we think entirely overcame the presumption of negligence in favor of the shipper caused by proof that the berries were received in good condition at the point of shipment, and were in a decayed condition at the time of reaching their destination. In this connection it may be stated that the undisputed proof shows that the berries were handled according to schedule time of the train, and there was no delay in their transit. It is true that A. H. Welch, a witness for the shipper, testified that the berries were bruised when inspected by him at the place of destination in Chicago. He said that he did not know, however, what caused this; but the explanation given by the witnesses for the carrier explains it. On account of their diseased condition they became soft and watery, and this, in the very nature of things, would cause them to become bruised. According to the train operatives, at no point along the route was there any rough handling of the car of berries.

It follows that the court erred in not directing a verdict for appellant; and for this error the judgment must be reversed, and the cause will be remanded for a new trial.