Missouri Pacific Railroad Company, Thompson, Trustee, *v.* The H. Rouw Company.

4-6453                                                       155 S. W. 2d 693

Opinion delivered November 3, 1941.

*Thomas B. Pryor* and *W. L. Curtis,* for appellant.

*Howell & Howell,* for appellee.

Greenhaw, J. The H. Rouw Company filed suit against the .appellant in the Crawford circuit court to recover $2,676.92, alleged damages on seven separate shipments of strawberries in carload lots. During the trial the other appellees, the Bald Knob Strawberry Growers' Association, the Russell Strawberry Growers'

Association, and the Ward Strawberry Growers' Association, were joined as parties plaintiff. These cars were shipped from Bald Knob, Russell and Ward, Arkansas, in the White county strawberry district, to St. Louis, Missouri, from which point they were diverted on instructions of the H. Rouw Company to Kansas City, Missouri. Only five of these cars are involved in this appeal. Four of them were sold and delivered in Kansas City, and one was again diverted at Kansas City and sent to Sioux City, Iowa, where it was sold to a Sioux Falls, South Dakota, concern through its Sioux City representatives. These shipments were all made during the last few days of April and the first few days of May, 1938. The complaint contains seven separate causes of action, joined in separate counts. The jury returned a verdict in favor of the appellant on count No. 5, and appellees took a non-suit on count No. 7. The jury returned verdicts in favor of the appellees on counts No. 1, 2, 3, 4 and 6 for a total of $1,133, upon which judgments were entered and from which is this appeal.

All counts in the complaint were based upon practically the same grounds for a recovery. In count No. 1 it was alleged: "That at Bald Knob, Arkansas, on or about May 5, 1938, the plaintiff, H. Rouw Company, delivered to the defendant 420 24-quart crates of strawberries, the property of the plaintiff, being then and there all in first class, prime merchantable order and shipping condition, loaded and contained in ART car No. 23012, and the defendant, in its capacity as common carrier of freight and merchandise for hire, then and there received and accepted said strawberries for transportation, and issued and delivered to the plaintiff its original straight bill of lading contract, and for a valuable consideration thereafter to be paid, it agreed to carry and transport said strawberries under the provisions of said contract and its duty as a common carrier of freight and merchandise for hire from Bald Knob, Arkansas, to St. Louis, Missouri; that the plaintiff instructed the defendant to divert said car of strawberries from St. Louis to Kansas City, Missouri, and that said diversion was made under the provisions of the original bill of lading contract, the

published tariffs, rules, regulations and classifications then in effect.'' A copy of the bill of lading was attached as an exhibit and made a part of the complaint. Plaintiff further alleged that the defendant and its connecting common carriers allowed and permitted the strawberries, while in its possession, to become wet, rotten, nested, moulded, and otherwise deteriorated, thereby depreciating and deteriorating the value thereof, all to the plaintiff's damage in the sum of $426.

In the succeeding counts it was alleged: ''For plaintiff's second and further cause of action it refers to the first cause of action and makes each and every allegation in paragraph one a part of this, its second cause of action, and in addition thereto alleges . . .'' The other allegations were practically the same as in count No. 1, except as to the car number, the origin of the berries, and the date of the bill of lading. The defendant filed an answer denying each and every material allegation in the complaint, and further answering said that the seven separate shipments upon which the seven separate causes of action were based consisted of perishable products, and that the depreciation in value, if any, was a result of the carelessness and negligence of the plaintiff and its agents in the gathering and loading of said strawberries, and in its delay in disposing of them subsequent to such loading, or was the result of such defects as were inherent in the type and quality of the strawberries in question and for which, under the terms of the contract of shipment, the defendant was not liable. Paragraph (b), § 1, of the bill of lading provided:

''No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereon, or damage thereto, or delay caused by . . . the act or default of the shipper or owner, or for natural shrinkage . . . The carrier or party in possession shall not be liable for loss, damage or delay occurring while the property is stopped and held in transit upon the request of the shipper, owner, or party entitled to make such request, or resulting from a defect or vice in the property.''

The above provision in the contract was specially pleaded as a bar to plaintiff's right of recovery herein to each of the seven separate shipments constituting the seven separate counts in its complaint. The bill of lading further provides in § 2 (a):

"No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market or otherwise than with reasonable dispatch. . . ."

The evidence in this case shows that North Little Rock, Arkansas, is a concentration point for refrigerator cars, and in this case all of the refrigerator cars used in the shipment in each count in this case were comparatively new cars. One of these cars was constructed in November, 1936, and the rest in December, 1936. The evidence showed that the cars involved were all ART cars of approved refrigeration type, and are what are termed all-steel refrigerator cars. Each car had a bunker in each end, the dimensions of each bunker being three feet wide, eight feet long, and six and one-half feet deep, the capacity of each bunker being 5,000 pounds of ice. At the time each of these cars was ordered by the appellees it was thoroughly inspected, both inside and outside of the car, including the drain pipes, at North Little Rock, by an experienced inspector. Before sending these cars to the White county strawberry district to be loaded with strawberries, both bunkers of each car were filled to capacity with 10,000 pounds of ice. The evidence showed they were in good condition, and were pre-cooled in order to reduce the temperature of the berries by eliminating field heat. During the time these cars were at Bald Knob, Russell and Ward for loading purposes, the bunkers were re-examined and replenished with ice to capacity. There were regular icing points *en route*. After leaving the point of origin the cars were examined and re-iced at Poplar Bluff, Missouri. Upon receipt in St. Louis they were again examined and re-iced. Upon their arrival in Kansas City those that needed it were again re-iced; in fact, part of the cars, on account of delay in unloading, were iced more than one time in Kansas City. All of the cars except the one in count No. 2, as heretofore stated,

were unloaded in Kansas City. The one in count No. 2 was diverted to Sioux City, Iowa. Another regular icing point *en route* is at St. Joseph, Missouri, where this particular car was again re-iced. It was also re-iced at Sioux City, Iowa. There was no evidence showing that the proper temperature was not maintained in these refrigerator cars, and there was no evidence that any of the cars were defective or that the refrigeration equipment was not properly working. According to the evidence, a melting process is necessary in order to create proper refrigeration, and at each regular icing place *en route* the appellant's agents and employees gave these particular cars proper inspection and attention. These cars moved with reasonable dispatch after they had been loaded and turned over to the carrier for shipment.

The appellant contends that the appellees were seeking to recover from the appellant under their contractual liability. The appellees, on the other hand, dispute this contention, and say that their suit is based upon the common-law liability of the carrier. As we view the evidence in this case, it is immaterial whether the action is based upon contract or in tort. If the contractual liability is the ground for recovery in this case, we think the appellees have failed to show by substantial evidence that the appellant violated its contract in any of these counts. Assuming, but not deciding, that this action is based *in tort*, upon the common-law liability of the carrier, we find that the appellant in each of these counts has overcome the *prima facie* showing of liability placed upon it by effective, convincing evidence showing every step in the inspection, cooling, icing and handling of these respective cars of strawberries from the time the cars were first inspected and iced in North Little Rock preparatory for delivery to the point of origin for the loading of the berries, on through to the ultimate destination and delivery of these cars of berries to the consignee. The law of this subject was announced in the case of *Railway Express Agency, Inc.,* v. *H. Rouw Co.,* 197 Ark. 1142, 127 S. W. 2d 251, where the law was reviewed at some length, and also in the case of *Railway Express Agency, Inc.,* v. *H. Rouw Co.,* 198 Ark. 423, 128 S. W. 2d 989. These cases

are controlling here, as there is no essential distinction between them and the case under consideration. Each of these cases cites the case of *Railway Express Agency, Inc., v. S. L. Robinson & Co.*, 184 Ark. 660, 43 S. W. 2d 543, in which this court said:

"We are of the opinion that the *prima facie* case so made by appellee, which raised a presumption of negligence against the carrier, was completely overcome by the evidence introduced by the latter. The evidence introduced by the carrier to overcome the *prima facie* case for negligence against it is very voluminous and cannot be set out in detail within the compass of this opinion. We have carefully considered it, however, and shall attempt to set out the substance of it.

"The carrier did not content itself with introducing witnesses as to the general condition of the shipment of strawberries while in its hands, but introduced all persons employed by it who had part in the different transactions during transit. We do not mean that all the operatives of the train were introduced as witnesses, but we do mean that the carrier followed the shipment step by step from the place of shipment to the place of delivery. It was shown by competent evidence that a refrigerator car of the most approved type was furnished the shipper within which to carry the berries. The condition of the car and its material, both as to its equipment and construction, were detailed by the witnesses. It was shown that the carrier had a sufficient number of stations along the route for re-icing the car and that the car was properly inspected and well iced at all these stations."

The same or similar proof was made in the instant case by numerous witnesses. Attached to the brief is a table giving a complete history of each car involved in the appeal in this case, from its point of origin to its destination, showing the time of the first icing, the time each car was loaded and delivered to the carrier, the time of each re-icing and the place thereof, the condition of the ice in the bunkers in each car at each of said points, and the amount of ice added at each place *en route* and at destination. Considerable time was used in loading some of these cars, and after they arrived at

their destination there was apparently considerable time used in unloading at least a part of them. The unloading of the car in count No. 1, having begun on the morning of May 7, was completed on the morning of May 10. Of course the appellant would not be responsible for any damage to the strawberries which might have occurred in the loading or unloading process. Perishable Tariff No. 9, ICC No. 9 of the National Perishable Freight Committee, in force at the time, was identified and introduced in evidence. It provides:

Rule 65. "No carrier is bound to transport the property by any particular train or vessel, or in time for any particular market or otherwise than with reasonable dispatch. Agents are not authorized to sign any bill of lading containing a guarantee to deliver goods at any specified time."

Rule 130. "Carriers furnishing protective service as provided herein, do not undertake to overcome the inherent tendency of perishable goods to deteriorate or decay, but merely to retard such deterioration or decay in so far as may be accomplished by reasonable protective service of the kind and extent requested by the shippers performed without negligence."

Rule 135. ". . . the duty of the carrier is to furnish without negligence reasonable protective service of the kind and extent so directed or elected by the shipper and carriers are not liable for any loss or damage that may occur because of the acts of the shipper, or because the directions of the shipper were incomplete, inadequate or ill-conceived."

Rule 225 (b). "After arrival of car in the Terminal train yard serving the destination and up to the time car is in process of unloading on team tracks, or, until lock or seal has been applied to the car by the consignee, or until car has been placed on private or assigned siding, carrier will, except as provided in paragraph (c) examine bunkers or tanks daily, and when such car requires additional ice during such period, it will be re-iced to capacity. After the unloading on team tracks has commenced, or after car has been placed under private lock or seal by consignee, additional re-icing will be furnished

only on written instructions from the shipper, owner, or consignee.''

Rule 215 (b). ''Carriers are not obligated to re-ice cars at loading stations nor at any point between loading stations and first re-icing station. . . .''

It would unduly extend this opinion to quote at length from the 197th Arkansas and the 198th Arkansas, *supra*. These cases settle the law applicable here. As was stated in the 198th Arkansas, *supra,* ''The question is whether the carrier's negligence caused the damage to the strawberries. The shipper makes a *prima facie* case when he shows that sound berries were delivered for shipment, and that the berries were in a damaged condition upon arrival at their destination. But the carrier is not an insurer against such damage, and it discharges its liability therefor when, and if, it shows that ordinary care was employed by it in the shipment.''

The evidence showed that in every car some of the cups of strawberries were filled too full and the berries were thereby mashed and damaged to some extent. There was also evidence that some of the berries were damaged from diseases inherent in strawberries. The carrier, of course, would not be responsible for these conditions. We fail to find from substantial evidence that the damaged condition of the strawberries in question was brought about or aggravated by any negligence on the part of the carrier. As stated above, it was shown by competent evidence that the carrier followed each of these shipments step by step, from the place of shipment to the place of delivery, showing that these cars were properly handled, inspected and iced, as was done in each of the cases cited above. Therefore, if the damages sought were in tort, the appellant has overcome the *prima facie* case of negligence. The appellees have not shown by substantial evidence that appellant violated its contract in the handling and transportation of said cars of strawberries. Hence, upon either theory, the appellant was entitled to an instructed verdict in its favor on each count.

The judgments are, therefore, reversed, and, as the causes of action appear to have been fully developed, they will be dismissed.