RAILWAY EXPRESS AGENCY, INC. *v.* SHULL.

5-540                                        275 S. W. 2d 882

Opinion delivered January 24, 1955.

[Supplemental opinion on rehearing delivered March 21, 1955.]·

*Collins, Core & Collins,* for appellant.

*Gordon B. Carlton,* for appellee.

GRIFFIN SMITH, Chief Justice. Railway Express Agency, Inc., denied liability for damages L. O. Shull claimed to have sustained on a shipment of strawberries from Horatio, Ark., to Minneapolis, Minn. The net loss ascertained by the jury was $2,368, for which judgment was rendered. The appeal is from that judgment.

Points relied upon for reversal are shown in the margin.[1]

Berries received at Shull's platform were usually called for by truck drivers, but shortly before April 27th, 1951 appellee anticipated the accumulation of a substantial quantity, perhaps exceeding demands for transportation by this method. He therefore requested Kansas City Southern's local agent to provide a refrigerator car. This agent, J. M. Lay, who also represented the express company, ordered two cars from Texarkana and had them spotted at a convenient point for loading. Although Shull had requisitioned but one car, Lay felt that there was a possibility two would be needed and therefore asked for the additional facilities as a matter of precaution.

---

[1] Instructions given at appellee's request submitted the controversy upon a common law theory of liability. Since appellant overcame the *prima facie* case thus shown, a verdict of non-liability should have been instructed. (2) Defective condition of the berries and the way appellee handled them caused the loss. (3) It was error to permit appellee to introduce testimony that purchasers who used truck transportation did not complain and to refuse appellant's proffered testimony that growers were complaining of berry rot at the time the shipment was made. (4) The giving of appellee's requested Instruction No. 1 was error: it withheld from the jury the factual issue whether appellee had proved specific acts of negligence alleged in the complaint under the preponderance rule, and the instruction was in conflict with others. This left the jury without an appropriate or consistent guide. (5) Appellee elected to sue on the shipping contract, and was charged with the burden of showing himself entitled to recover under its terms.

Developments made it necessary to utilize but one of the two—Car No. 1404. Shipping tariffs required the user to pay for ice used as a refrigerant, and when Lay asked Shull whether the bunkers should be filled at Texarkana he was told that this was not required. Whether Shull would have been charged for icing both cars when but one was ordered and but one used is not explained. It is certain, however, that the shipper understood the express company's custom of charging customers for refrigeration, including salt; that Shull was not certain the car would be used; that the company's agent hoped two would be required, that the facilities were made available at four o'clock the afternoon of April 27th, and that a request that Car No. 1404 be iced was not made until 7:45 p.m. It was then necessary to order ice from DeQueen, a distance of eight or nine miles. The bunkers were full at 11:45.

Shortly after 7:45—or, as Lay expressed it, "as soon as I learned that the car was to be used"—it was inspected in an effort to guard against defects. By that time it was almost dark. Lay entered the car, closed the door, and attempted to ascertain if there were any leaks or holes that would interfere with refrigeration, but could find none. In effect, however, he explained that the inspection was more or less superficial; that unless someone on the outside with a flashlight assisted it was quite difficult to discover small cracks through which air could enter. As a matter of fact, Lay received information the following morning that a crack or "leak" had been found. It was of a character sufficient to attract the attention of J. K. Cowling, inspector for the U. S. Production and Marketing Administration, who also acted for the Arkansas State Plant Board.

Lay attributed the crack to a sagging door and thought the area involved was two and a half to three inches in length and a quarter of an inch at the widest point, tapering to considerably less. Another witness said the hole was large enough to put one's hand through.

When the task of icing the car was finished at 11:45 loading was well advanced, the first crates having been

placed approximately an hour before when inside temperature was 78 degrees—somewhat higher than temperature of the berries on the loading platform. That night 274 crates were loaded. Following repairs made the morning of the 28th loading was completed with 149 additional crates. From 11:30 the morning of the 28th until 2:10 that afternoon appellee undertook to accelerate refrigeration by operating an 18-inch attic fan, the purpose being to force lower temperatures into the crates. Shull testified that in addition to defective condition of the west door, where the repairs were made, light leaked through it and through the east door. Other witnesses did not observe these secondary defects, or testified that they did not exist.

At 2:10 the afternoon of April 28th commodity temperature was 62 degrees. Before movement from Horatio began the inside-car temperature had fallen to 54 degrees. Periodic inspections by appellant after the car was put in transit revealed satisfactory conditions. There is no complaint that company negligence subsequent to the 28th contributed to the deterioration discovered at Minneapolis; nor is it shown that appropriate steps in respect of salvage were not taken.

Appellant's first contention is that it overcame the plaintiff's *prima facie* showing of negligence. This conclusion presupposes that the berries were in bad condition when received for shipment. By Instruction No. 1 the jury was told that if the shipment was received at Horatio in good, sound, and merchantable order, and upon arrival at destination the vice complained of was ascertained, then the law would presume that such damage was caused by negligence of the carrier, placing upon the defendant the burden of proving by a preponderance of the evidence that its want of care was not responsible for the loss.

Plaintiff's Instruction No. 2 defined ordinary care. The carrier is required to furnish a properly constructed refrigerator car suitable for transporting perishable commodities.

Instructions requested by the defendant and refused would have submitted to the jury the plaintiff's supposed negligence in not requiring that the car be pre-iced, and whether inherent condition of the berries when loaded was the proximate cause of loss, or materially contributed to it.

The certificate executed by Cowling in his official capacity as a representative of the state and federal governments shows that the berries were U. S. No. 1, ⅝th-inch minimum. In addition to the presumption attaching to the inspector's certificate, there was substantial testimony from which the jury could have found that undisclosed deterioration at the time of loading was not sufficiently established.

We agree with appellant that the record of temperatures, re-icing, and incidental handling introduced by the defendant made a *prima facie* showing of care. *American Railway Express Company v. H. Rouw Company,* 185 Ark. 526, 48 S. W. 2d 220.[2] But in none of the cases cited by appellant was the defective condition of a car injected as a factual issue from which the jury could find that negligence not traceable to the plaintiff was of a character to support what in this case the jury must have inferred: that air leakage around the door retarded refrigeration to such an extent that deterioration began before the car left Horatio.

Objections were interposed to testimony by Shull that on April 27th, 1951, he sold berries to designated persons, firms, or agencies, mentioning the price for which the berries sold and naming the purchasers. There was also an objection to Shull's testimony that U. S. No. 1 strawberries must be free from decay, rot, mold, moisture, or any foreign substance that might affect values. The witness qualified by referring to a standard manual. He also stated that all of the berries sold April 27th and 28th were inspected and graded as U. S. No. 1, and that

[2] See *Missouri Pacific Railroad Co.* v. *The H. Rouw Co.,* 202 Ark. 1139, 155 S. W. 2d 693; *Railway Express Agency, Inc.* v. *H. Rouw Co.,* 198 Ark. 423, 128 S. W. 2d 989; same, 197 Ark. 1142, 127 S. W. 2d 251; *Railway Express Agency, Inc.* v. *S. L. Robinson & Co.,* 184 Ark. 660, 43 S. W. 2d 543.

the grade was stamped on the crates by one of Shull's employes "who went around with the inspector and supervised the work". The witness was also permitted to testify that persons who made purchases prior to April 27th and 28th continued to be customers and that they did not complain that the berries were not up to standard. The purchasers were identified when the questions were asked.

These recitals could only remotely aid the jury in determining whether the specific shipment made by appellee was sub-standard when it was received by the carrier. Exclusion would not have sustained an allegation of error, but it can hardly be said that their inclusion was prejudicial. The shipments by truck were necessarily subjected to different treatment.

Appellant's attempt to offset the effect of the testimony that has just been discussed came about in this way: Lay was asked whether—after Car No. 1404 left Horatio—he talked with strawberry growers in the trade territory. Following an affirmative reply the question was, "Were there any complaints at that time?" When plaintiff's objection was sustained appellant's counsel explained that the testimony was offered for the purpose of meeting plaintiff's evidence to the effect that he did not receive complaints "as to the condition of these berries from people to whom he sold them".

The question, of course, was too general to have probative value. Lay was not in the business of buying or selling strawberries. Counsel did not attempt to rephrase the question in a way to remove it from the hearsay category, and the court's ruling was not erroneous.

On the principal issues the case resolves itself into a controversy where the carrier, charged with a duty to protect perishable commodities, supplied a defective car. It executed a receipt for U. S. No. 1 strawberries in circumstances from which a factual inference that they were in good condition could be drawn by the jury, and the shipment reached its destination in bad shape. It

might be logically argued that the plaintiff's failure to direct pre-icing caused the damage, but against this background we find the company's receipt for number one berries and the admitted fact that the car leaked air. Whether this leakage occasioned the damage was factual, and in the absence of prejudicial trial error we are not at liberty to set the verdict aside.

Affirmed.

## ON REHEARING

GEORGE ROSE SMITH, J., on rehearing. Our original opinion did not discuss what the appellant asserts to be a prejudicial conflict in the court's instructions. This contention is now renewed in a petition for rehearing, it being insisted that the present case is so contrary to four prior decisions that they have been tacitly overruled.

The court gave the plaintiff's requested Instruction No. 1, which told the jury in substance that if the strawberries were received by the defendant in good condition and were delivered by it in damaged condition, there would arise a presumption of negligence which would shift to the defendant the burden of showing by a preponderance of the evidence that the damaged condition was not the result of negligence on its part. It is contended that this instruction was in conflict with the defendant's Instruction No. 4, by which the jury were told that the plaintiff had the burden of proving the allegations of his complaint and that it did not devolve upon the defendant to disprove those allegations.

That the instructions were in conflict is true, but the absence of reversible error lies in the fact that the plaintiff's instruction was correct while the defendant's was wrong. The case of *St. Louis-San Francisco Ry. Co.* v. *Cole*, 174 Ark. 10, 294 S. W. 357, is in every material respect identical with this case and settles every question now argued. There, as here, the plaintiff alleged and made proof of specific acts of negligence. There, as here, an interstate shipment of fruit was in-

volved. There the court held that the plaintiff had filed his written claim for damages with the carrier within the six months allowed by federal law. Here the plaintiff alleged and proved the making of a written claim within the time allowed (which is now nine months, 49 USCA, § 20 [11]), and, except for a formal denial in the answer, the defendant has not disputed this issue.

In the *Cole* case, as here, the court gave the plaintiff's instructions (numbered 2 and 3) to the effect that proof that the peaches were received by the carrier in good condition and were delivered in damaged condition made a *prima facie* case, shifting to the defendant the burden of showing its freedom from negligence. It was held that since the plaintiff had complied with the federal requirement of a timely written claim the plaintiff's instructions correctly declared the law.

In the *Cole* case, as here, the court also gave defendant's instructions (numbered 5 and 12) which placed upon the plaintiff the burden of proving certain allegations. In holding the conflict to be invited error the court said:

"Having granted appellee's prayers for instructions Nos. 2 and 3, to be sure the court should not have granted the appellant's prayers for instructions Nos. 5 and 12, because the latter prayers were in conflict with the former and made the charge of the court on the burden of proof as to negligence inconsistent and contradictory; however, appellant is not in an attitude to complain of the ruling of the court in granting its prayers for instructions Nos. 5 and 12. Appellee's prayers for instructions Nos. 2 and 3 were correct, and appellant cannot claim that to be reversible error which it invited the court to make by granting its prayers Nos. 5 and 12."

The four prior cases which the appellant thinks to have been overruled are so readily distinguishable that extended discussion is unnecessary. *St. Louis-San Francisco Ry. Co.* v. *Burford,* 180 Ark. 562, 22 S. W. 2d 378, embodies a mere generalization to the effect that the burden is on the shipper to prove negligence. *Mo. Pac. R.*

*Co.* v. *Fine,* 183 Ark. 13, 34 S. W. 2d 755, disapproved an instruction declaring that the carrier is an *insurer* of perishable goods. There is an obvious difference between this statement of substantive law and the procedural rule by which certain proof shifts to the defendant the burden of going forward with the evidence, the latter being a form of *res ipsa loquitur.* A similar instruction was condemned in *American Ry. Express Co.* v. *Cole,* 183 Ark. 557, 37 S. W. 2d 699, where it was further held that the error was not cured by the giving of a correct charge on the matter of ordinary care. In the fourth case, *Railway Express Agency* v. *H. Rouw Co.,* 184 Ark. 482, 42 S. W. 2d 761, an instruction was disapproved on the ground that it required the carrier to furnish proper facilities instead of merely to exercise ordinary care to do so. Thus there is no conflict between the present holding and the cases cited.

Rehearing denied.