# Richmond.

## Chesapeake and Ohio Railway Company v. Timberlake, Currie & Co., Inc.*

### March 17, 1927.

1. Carriers—*Action for Damages to a Carload of Lettuce—Evidence—Report of Inspector as to Condition of the Lettuce—Report not Signed or Verified by the Inspector—Case at Bar.*—In the instant case, an action against carrier for damages to a carload of lettuce, a witness for the plaintiff testified that he inspected the contents of the car at the place of delivery to the initial carrier and found them in good condition. He was asked to file his report with his depositions. He said that he dictated the report to a dictaphone and the stenographer made out the report from the dictaphone. The witness filed a copy of the report with his depositions. Defendant objected to the depositions and to the filing of the report in evidence on the ground that it was not signed by witness or verified by him at the time it was typed from the dictaphone.

   *Held:* That there could be no doubt that the testimony of the witness was proper evidence and in as much as the witness recognized the paper as his inspection report and testified that he examined the lettuce and that it was in good condition it could not be said that defendant was prejudiced by the introduction of the report.

2. Carriers—*Liability—Insurer.*—A common carrier is liable, as an insurer for all loss or damage to property delivered to it for transportation, except such as may be caused by an act of God, an act of the public enemy, an act of public authority, the inherent nature of the goods, or interference of the owner.

2. Carriers—*Liability of Carrier—Damage to Goods in Transit—Delivering Carrier—Burden of Proof—Case at Bar.*—In the instant case, an action against a delivering carrier for damages to a carload of lettuce, when plaintiff proved that the goods were received by the initial carrier in good order and delivered by the delivering carrier in bad order, he had established a case which entitled him to recover. In order to defeat his right of recovery, the burden was on the defendant to disprove these facts or to prove that the loss or damage was approximately and exclusively due to one of the five excepted causes, or to some cause which the contract excepted.

4. Carriers—*Liability of Carrier—Delivering Carrier—Presumptions.*—A

---

*See C. & O. R. Co. v. Crenshaw & Co. 148 Va., 137 S. E. 507.

connecting carrier, who has completed the transportation and de-livered the goods to the consignee in a damaged condition or de-ficient in quantity, will be held liable in an action for the damage or deficiency, without proof that it was occasioned by his fault, unless he can show that he received them in the condition in which he delivered them. The condition and quantity of the goods when they were delivered to the first of the connecting carriers being shown, the presumption will arise that they continued in that condition down to the time of their delivery to the carrier completing the transportation and making the delivery to the consignee, and that the injury or loss occurred while they were in his possession.

5. CARRIERS—*Liability of Carrier—Exceptions—Act of God—Proximate Cause.*—The act of God on which the carrier bases his exemption from liability must be the proximate cause of the loss or injury, not a remote cause, the exclusive cause rather than mere contributing cause. The same rule of course applies to the other four exceptions which all relieve a carrier from liability.

6. CARRIERS—*Liability of Carrier—Damage to Goods in Transit—Presumption of Negligence—Rebutting Presumption—Due Care—Questions of Law and Fact—Case at Bar.*—In the instant case, an action against the delivering carrier for damages to a carload of lettuce, defendant contended that if any presumption of negligence arose from the fact that the lettuce was received in good condition and delivered in bad condition, the defendant was only required to rebut it by proof of due diligence. This however is not the law. When the plaintiff proved that the lettuce was received by the initial carrier in good condition and delivered by the delivering carrier in a bad condition, it made out a *prima facie* case of negligence which entitled it to re-cover. This presumption could not be overcome, as a matter of law, by proof which tended to show that the defendant was not in fact negligent, unless it was sufficient to prove that the damage was due proximately and exclusively to the inherent nature of the lettuce. In such a situation the issue of negligence and whether the presump-tion of negligence arising from the damaged condition of the lettuce had been rebutted, were questions for the jury.

7. CARRIERS—*Liability of Carrier—Exceptions—Burden of Proof on Car-rier—Reason of the Rule.*—The common law rule which requires the carrier to free himself from the liability of an insurer only by showing that the loss or damage was due to one of the five excepted causes is founded upon the necessity of commerce and public policy. The carrier is in possession of knowledge of the cause of the loss or dam-age, which it would be impossible often for the plaintiff to acquire.

8. INSTRUCTIONS—*Instructions Covering the Case—Refusal of Other In-structions.*—Where the jury has been properly and sufficiently in-structed by the instructions granted, it is immaterial that the court refused to give other instructions offered.

9. Carriers—*Instructions—Liability of Carrier as Insurer—Instructions Read Together—Case at Bar.*—In the instant case, an action against a carrier for damages to a carload of lettuce, while instructions 1 and 2 given for the plaintiff upon the carrier's liability should have been couched in different language, yet when the instructions granted are read together, there was no merit in the contention that instructions 1 and 2 told the jury that the defendant was an absolute insurer against any change in the condition of the lettuce during the course of transportation. Such is not the law, and instruction "F" informed the jury that if they believed from the evidence that "the damages in this case were caused solely by the inherent nature of the lettuce to deteriorate and decay, unmixed with any negligence on the part of the defendant, then they should find for the defendant." As appears from instruction "F," the word "damages," as used in instructions 1 and 2 was not intended to include any changed condition of the lettuce caused by its inherent tendency to deteriorate and decay.

10. Carrier—*Liability of Carriers—Sufficiency of Instruction—Appeal and Error—Verdict not Plainly Wrong.*—In the instant case, an action against a carrier for damages to a carload of lettuce, it was left to the jury to say, under all the facts and circumstances shown in evidence, whether the plaintiff had made out a *prima facie* case of negligence which entitled it to recover, and if so, whether the defendant had overcome that presumption by showing that the damage sustained was due solely and proximately to the inherent nature of the lettuce. The jury determined these questions in favor of the plaintiff, and the Supreme Court of Appeals could not say that the verdict was plainly wrong or without evidence to support it.

Error to a judgment of the Law and Equity Court of the city of Richmond, Part II, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Leake, Leake and Sp1, er,* for the plaintiff in error.

*Bethel & Williams,* and *L. C. O'Connor,* for the defendant in error.

West, J., delivered the opinion of the court.

Timberlake, Currie & Company, Incorporated, brought action against the Chesapeake and Ohio Railway Company for damages to a carload of lettuce, caused by the alleged negligence of the defendant. The plaintiff recovered a judgment for $336, of which the defendant company now complains.

The parties will be referred to as plaintiff and defendant, with respect to their positions in the trial court.

The lettuce which was shipped in refrigerator car P. F. E. 11633 on April 10, 1923, from El Centro, California, over the Southern Pacific and C. R. I. & P. (Rock Island) railroad, was consigned to Crutchfield, Woolfork & Clore, at Chicago, Illinois.

On April 16, 1923, the consignee instructed the C. R. I. & P. to hold the car at Burr Oak, its Chicago yards, for orders. The car arrived April 18th and under consignee's instructions was held there until April 23rd, when the company was directed to divert the shipment to the American Fruit Growers, Incorporated, at Richmond, Virginia, and advise Timberlake, Currie & Company, Incorporated. The car was delivered to the Indiana Harbor Belt Railroad early on the morning of April 24th, and was turned over to the Chesapeake and Ohio Railway Company at Hammond, Indiana, in the Chicago yard limits, at 7 p. m. the same day. The defendant transported the car over its lines from Hammond to Richmond, Virginia, and delivered it at its Richmond yards on Sunday afternoon April 29th, and on Monday, April 30th, at 10:30 a. m., delivered it to the plaintiff.

According to the evidence for the plaintiff: Lee Conant, inspector for American Fruit Growers, Incorporated, inspected the contents of the car upon its arrival at Burr Oak, April 20, 1923, and the lettuce was sound, clean and in good condition, with some ice over

the top of the load, and ice in the crates. When the shipment was received at Richmond the lettuce in 112 crates was in very bad order, rotten, slimy, badly decayed and sunken in the crates. The 112 crates sold for $336 less than it would have sold for if in first class order. A good car of lettuce properly refrigerated should keep at least three or four weeks.

According to the evidence for the defendant: The ice bunkers in the car had a capacity of 11,000 pounds and the car was iced by the defendant at each regular icing station between Chicago and Richmond, and delivered at destination with bunkers three-fourths full. The car was inspected the day it arrived in Richmond and found to be in good mechanical condition in every way, and appeared to be refrigerating properly.

It is conceded that this shipment was from Chicago to Richmond and not a through shipment from California to Richmond.

The defendant assigns error to the action of the court (1) in admitting certain evidence, (2) in giving and refusing instructions, and (3) in refusing to set aside the verdict of the jury.

[1] During the taking of the deposition of Lee Conant, a witness for the plaintiff, he stated that he inspected the contents of car P. F. E. No. 11633 at Burr Oak in April, 1923, and found the lettuce in a very good condition. He was asked if he made an inspection report, to file the same with his deposition. He replied that he dictated his report on the dictaphone, and the stenographer made out the report from the dictaphone and filed it away at the office of the American Fruit Growers, Incorporated; and the witness filed a copy of this report with his depositions. Defendant objected to the deposition of Conant and to the filing of the report as evidence, on the ground that it was not signed by him

or verified by him at the time it was typed from the dictaphone. There can be no doubt that the testimony of Conant was proper evidence and inasmuch as he recognized the paper as a copy of his inspection report, and *testified* in his deposition that he examined the lettuce at Burr Oak and "it was sound, clean, good condition; some ice over top of load; ice in crates," it cannot be said that the defendant was prejudiced by the introduction of the report in evidence.

[2] A common carrier is liable, as an insurer, for all loss or damage to property delivered to it for transportation, except such as may be caused by an act of God, an act of the public enemy, an act of public authority, the inherent nature of the goods, or interference of the owner. Dobie on Bailment and Carriers, page 324.

[3] When the plaintiff proves that the goods were received by the carrier in good order and delivered by the delivering carrier in bad order, he has established a case which entitles him to recover. In order to defeat his right of recovery, the burden is on the defendant to disprove these facts or to prove that the loss or damage was proximately and exclusively due to one of the five excepted causes above mentioned, or to some cause which the contract excepts.

In *Herring* v. *Chesapeake & Western R. R. Co.*, 104 Va. 778, 784, 45 S. E. 322, 324, this court quotes with approval the following language from *Railroad Co.* v. *Reeves*, 10 Wall. 176, 19 L. Ed. 909: "A common carrier assumes all risks except those caused by act of God or the public enemy."

In *C. & O. Ry. Co.* v. *Beasley*, 104 Va. 788, 790, 52 S. E. 566, 3 L. R. A. (N. S.) 183, we find this: "A common carrier is an insurer of the goods it undertakes to carry for hire, and is bound to deliver same safely, and from this duty can only be exonerated by the act of God or a public enemy."

To these have been added, the act of the owner, public authority and inherent nature of the goods. Dobie on Bailments and Carriers, page 335.

In Dobie on Bailments and Carriers, pages 347 and 348, the author says: "After the proof indicated in the preceding paragraphs, the carrier, unless he can disprove the facts thus established by the plaintiff, can escape liability only by showing that such loss or injury was due to one of the five excepted perils. When the liability of the common carrier of goods remains as at common law, no other evidence is relevant or in any way affects the issue between the parties. The burden, then, of approximately connecting the loss or injury with one of the excepted causes is clearly upon the carrier."

In 6 Cyc. at page 519, the law is stated thus: "Proof of loss of or injury to the goods while in the carrier's possession as carrier, throws upon him the burden of showing that the loss or injury occurred by reason of one of the excepted causes, or that it was within some special exception made by contract. Therefore, in the absence of any showing on the part of the carrier, or any exception contained in the contract (if plaintiff sues on a special contract), proof of the loss or injury is sufficient. *It is for the carrier to bring the case within one of the common law exceptions, if he relies on such exception as a defense.*" (Italics ours.)

In *Chicago & Northwestern Ry. Co.* v. *Whitnack Produce Co.*, 258 U. S. 369, 42 Sup. Ct. 328, 66 L. Ed. 665, the court said: "While this court has not expressly approved it, we think the common law rule, supported both by reason and authority, is correctly stated in section 1348, Hutchinson on Carriers, Third Edition:

[4] " 'A connecting carrier, who has completed the

transportation and delivered the goods to the consignee in a damaged condition or deficient in quantity, will be held liable in an action for the damage or deficiency, without proof that it was occasioned by his fault, unless he can show that he received them in the condition in which he delivered them. The condition and quantity of the goods when they were delivered to the first of the connecting carriers being shown, the presumption will arise that they continued in that condition down to the time of their delivery to the carrier completing the transportation and making the delivery to the consignee, and that the injury or loss occurred while they were in his possession.' "

The foregoing statement of the law in the *Whitnack Case* was quoted with approval by Judge Burks in the opinion of this court in *Southern Railway* v. *Russell*, 133 Va. at page 295, 112 S. E. 700.

[5] In Dobie on Bailments and Carriers, at page 330, we find this: "The courts have been very zealous in refusing to excuse the carrier on the score of an act of God, when there has been any admixture of human agency. And we have just seen the underlying idea of the phrase, 'act of God,' is the total absence of any act of man. The act of God then on which the carrier bases his exemption from liability must be the proximate cause of the loss or injury, not a remote cause; the exclusive cause rather than mere contributing cause."

In support of this statement the author cites many authorities. It necessarily follows that the same rule applies to the remaining four exceptions.

In *Southern Railway Co.* v. *Finley*, 127 Va. 139, 102 S. E. 559, Judge Prentis, discussing the burden of proof in such cases, says: "It is also claimed that the evidence is insufficient to support the judgment, and

there is much discussion in the briefs as to whether the burden of proof as to the cause of the damage was upon the plaintiffs or the company. In our view, the weight of authority is that such burden is upon the company when it receives for transportation live stock, in good condition, unaccompanied by the owner or his agent, and delivers it in damaged or bad condition. *Galveston, H. & S. F. R. Co.* v. *Wallace,* 223 U. S. 481, 56 L. Ed. 523, 32 Sup. Ct. 205 (a pertinent case, though not involving a shipment of live stock); *Church* v. *Chicago B. & Q. R. R. Co.,* 81 Neb. 615, 116 N. W. 520; *Teeter* v. *Southern Express Co.,* 172 N. C. 616, 90 S. E. 761; *Illinois Cent. R. Co.* v. *Word,* 149 Ky. 229, 147 S. W. 949; Note, 130 Am. St. Rep. 442.''

In *C. & O. Ry. Co.* v. *National Bank,* 122 Va. 471, 95 S. E. 454, this is said: ''Now the common law, upon the proof merely of delivery to a common carrier of inanimate goods for transportation and proof of their non-delivery, the law implies that they have been lost by the negligence of the common carrier or by reason of some cause for which it is responsible, and the plaintiff suing for damages occasioned by such loss is relieved of the burden of proof of the cause of the loss.''·

[6] Defendant earnestly contends that if any presumption of negligence arose the defendant was only required to rebut it by proof of due care. This position is in conflict with the authorities heretofore cited and relied on in this opinion.

When the plaintiff proved that the lettuce was received by the initial carrier in good condition and delivered by the delivering carrier in a bad condition, it had made out a *prima facie* case of negligence which entitled it to recover. This presumption could not be overcome, as a matter of law, by proof which

tended to show that the defendant was not in fact
negligent, unless it was sufficient to prove that the
damage was due proximately and exclusively to the
inherent nature of the lettuce.   In such a situation the
issue of negligence and whether the presumption of
negligence arising from the damaged condition of the
lettuce had been rebutted, were questions for the
jury.

In Dobie on Bailments and Carriers, section 116,
page 340, this is said:   "The carrier is not an insurer
against loss caused by the inherent nature, vice, defect,
or infirmity of the goods.   Thus, the carrier, when not
himself at fault, is not liable for the decay of fruit, the
evaporation of liquids, the bursting of a hogshead of
molasses due to fermentation, and the like."

[7] The common law rule which requires the carrier
to free himself from the liability of an insurer only
by showing that the loss or damage was due to one
of the five excepted causes is founded upon the neces-
sity of commerce and public policy.   The carrier is
in possession of knowledge of the cause of the loss or
damage, which it would be impossible often for the
plaintiff to acquire.

In 4 R. C. L., section 175, we find this:   "At all
events, such severity as may inhere in the rule seems
necessary to the security of property, and the pro-
tection of commerce; it is founded on the great principle
of public policy; has been approved by many genera-
tions of wise men; and if the courts were now at liberty
to make instead of declaring the law, it may well be
questioned whether they could devise a system which
on the whole would operate more beneficially."

The court gave the following instructions:   Nos. 1
to 5, inclusive, on motion of the plaintiff; instructions

314 C. & O. R. Co. *v.* TIMBERLAKE, 147 VA. 304.

"B," "G" and "F" on motion of the defendant; instruction "J" on the court's motion, in lieu of defendant's instruction "A."

1. "The court instructs the jury that if you believe from the evidence that the lettuce in question was in good condition at the time of the inspection in the hands of the Rock Island Railroad Company at Chicago on April 20th and that it was delivered to the Chesapeake and Ohio at Chicago in the same good condition on April 24th, and that the Chesapeake and Ohio Railroad Company transported the goods to Richmond, Virginia, and there offered them for delivery to Timberlake, Currie and Company in a damaged condition, then there is a *prima facie* presumption of law that the damage accrued to the lettuce while it was in the hands of the Chesapeake and Ohio Railway Company; and the court further tells the jury that the burden of proof in such case is upon the said Chesapeake and Ohio Railway Company to show that said damages did not accrue to the lettuce while in its possession and if you further believe from the evidence that the Chesapeake and Ohio Railway Company has not sustained this burden of proof you must find your verdict for the plaintiff."

2. "The court instructs the jury that a connecting carrier who has completed the transportation and delivered goods to a consignee in a damaged condition, must be held liable in an action for the damage to the goods without proof that it was occasioned by its fault, unless it shows that it received them in the condition in which it delivered them. The condition of the goods when they were in the hands of the preceding or connecting carrier being shown, a presumption of law arises that they continued in that same condition to the time of their delivery to the carrier completing the transpor-

tation and making the delivery to the consignees and that the damage accrued while the goods were in said delivery carrier's possession?

3. "The court instructs the jury that as a general proposition of law a common carrier of freight for hire and reward is liable for all damage to perishable freight entrusted to its care for transportation, it being an insurer, except such damages as may be caused by:

"(1) The inherent nature of the goods.

"(2) An act of God.

"(3) Interference by the owner.

"(4) An act of public authority, or

"(5) An act of the public enemy:

nor does any one or more of these relieve the carrier of its liability as an insurer unless it further shows that its negligence, if any existed, did not unite with any one or more of these five exceptions.

4. "The court instructs the jury that while a carrier does not guarantee time of delivery, yet the law requires the transportation of perishable goods with reasonable dispatch.

5. "If the jury should find its verdict for the plaintiff, from the evidence and other instructions of the court, then the measure of damages is the difference in market value between the lettuce in such damaged condition and its market value in good condition; the market value to be that value at Richmond, Virginia, at the time the lettuce should have been delivered by the Chesapeake and Ohio Railroad Company to Timberlake, Currie and Company, Incorporated, the amount of damage, however, not to exceed the amount claimed by the plaintiff in its notice of motion."

"B." "The court instructs the jury that although

there is a *prima facie* presumption arising from the acceptance of goods at Chicago, Illinois, by the defendant for transportation, without noting an exception as to their condition, that the goods were then in a good condition so far as apparent on ordinary inspection, yet this presumption may be rebutted and shown to be untrue if the jury believe from all the evidence and circumstances of the case that this presumption has been rebutted, they shall find for the defendant."

"G." "The court instructs the jury that the defendant is not liable for any damages to the lettuce which may be due to their transportation from El Centro, California, to Chicago, or to their subsequent detention under load at Chicago, awaiting disposition orders of the consignee, or to the combination of these events, before being received by the defendant for transportation to Richmond. And the court further instructs the jury that if they believe from all the evidence and circumstances of the case that the damaged condition of the lettuce at Richmond was due solely to either of these events, or to the combination of both of them, they shall find for the defendant."

"F." "The court instructs the jury that although a carrier is an insurer of goods delivered to it for transportation, yet in the case of perishable goods the carrier is not liable for such damages as are caused solely by the inherent tendency of the goods themselves to deteriorate and decay. If, therefore, the jury believe from the evidence that the damages in this case were caused solely by the inherent nature of the lettuce to deteriorate and decay, unmixed with any negligence on the part of the defendant, then you should find for the defendant."

"J." "The court instructs the jury that the burden of proof is upon the plaintiff to show that the lettuce

was in good condition when in the hands of some preceding carrier, and if the jury believe from the evidence that the plaintiff has failed to show by a preponderance of the evidence that the lettuce was in such good condition they shall find for the defendant.

[8] We have carefully considered all the instructions given and refused, and find no reversible error in the rulings of the court in granting or refusing instructions. The instructions granted sufficiently presented to the jury the law applicable to the case, and it is therefore immaterial that the court refused to give other instructions offered by the defendant.

[9] While instructions 1 and 2 should have been couched in different language, yet when the instructions granted are read together, as they should be, there is no merit in the contention that instructions 1 and 2 tell the jury that the defendant was an absolute insurer against any change in the condition of the lettuce during the course of transportation. Such is not the law, and instruction "F" informed the jury that if they believed from the evidence that "the damages in this case were caused solely by the inherent nature of the lettuce to deteriorate and decay, unmixed with any negligence on the part of the defendant, then they should find for the defendant." As appears from instruction "F," the word "damages," as used in instructions 1 and 2, was not intended to include any changed condition of the lettuce caused by its inherent tendency to deteriorate and decay.

[10] The case was left to the jury to say, under all the facts and circumstances shown in evidence, whether the plaintiff had made out a *prima facie* case of negligence which entitled it to recover, and, if so, whether the defendant had overcome that presumption by showing that the damage sustained was due solely and

proximately to the inherent nature of the lettuce. The jury has determined these questions in favor of the plaintiff and we cannot say the verdict is plainly wrong or without evidence to support it.

The judgment will be affirmed.

*Affirmed.*