**BRONSTEIN v. BALTIMORE & O. R. CO.**
Nos. 20370, 20372, 20374.

District Court, E. D. Pennsylvania.
March 25, 1939.

Leon S. Rosenthal, of Philadelphia, Pa., for plaintiff.

Guckes, Shrader, Burtt & Thornton, J. F. Shrader, and Howard Burtt, all of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

These three cases, consolidated and tried together to the Court without a jury, were brought to recover damages for injuries to seventy-six carloads of watermelons, transported from various points in Georgia, Florida and South Carolina to Philadelphia. The plaintiff is the consignee and holder of the bills of lading. The defendant was the delivering carrier.

The evidence shows that the melons were loaded in bulk in accordance with the tariff classifications and rules of the carriers, packed tightly in cars lined with paper and padded with straw, and that when loaded they were, so far as could be ascertained by the usual inspection, in good condition and free from decay and disease.

Upon arrival every carload in suit showed a certain amount of damage, varying widely in different cars, and consisting principally of cracks and bruises in the melons caused by jolting, jarring, bumping, stopping and starting of the cars, during transportation.

The parties having stipulated the measure of damages properly applicable to the cases, the only issue that requires any discussion is the liability of the defendant.

In the ordinary suit against a common carrier for damage to property transported the plaintiff is not required to prove negligence. The carrier's liability arises under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C.A. § 20 (11, 12). Whether the carrier be called an insurer or whether his liability be referred to a conclusive presumption of negligence is not important. The rule is that "a carrier is liable for a failure to transport safely goods intrusted to its care, unless the loss or damage was due to one of the specified causes." Chesapeake & O. R. Co. v. A. F. Thompson Mfg. Co., 270 U.S. 416, 422, 46 S.Ct. 318, 319, 70 L.Ed. 659.

In the present cases, however, negligence on the part of the carrier is the issue, for the following reasons: Two of the specified causes under the rule quoted are inherent nature of the property and act or fault of the shipper. In the cases at bar the melons were accepted "Shipper's Load and Count," so that the loading was the shipper's act. The commodity was inherently perishable, and if a method of loading was chosen which caused or contributed to the damage the strict rule of carrier's liability would not apply.

The shipper in the cases at bar chose to ship the melons in bulk. They were piled with care and in an orderly fashion on the floor of the car, four tiers deep. They could have been crated, in which case there would have been no shifting or damage except under the roughest kind of handling. Naturally, the cost of crating is much higher, and there is no evidence that crating has been adopted as a general or customary method of shipping watermelons.

The position of the defendant is that loading in bulk is in itself negligent, and that if the shipper loads in that manner no recovery can be had for any damage which could have been avoided by crating. I do not think this view can be accepted. Bulk loading of melons is the usual, if not the universal, method in use. On the other hand, it must be conceded that it did contribute to the condition of the melons on their arrival in the limited sense that the injury was made possible by the act of the shipper in adopting a less secure method of loading than the best possible. In

...

other words, the shipper could have loaded the cars in a manner which would have made the goods immune to damage from all but extremely negligent handling.

Even so, the carrier may still be liable, and at this point arises the issue of negligence.

■ The carrier's liability in a case where the damage would not have happened but for the manner of loading is no longer the broad liability almost equivalent to that of an insurer, described in Chesapeake & O. R. Co. v. A. F. Thompson Mfg. Co., supra, but depends upon proof of actual negligence.

■ Thus the burden in these cases was upon the plaintiff to show carrier's negligence. His evidence consisted of proof of delivery to the carrier in good condition and delivery to the consignee in bad condition. " * * * such evidence makes out a prima facie case of negligence." Chesapeake & O. R. Co. v. A. F. Thompson Mfg. Co., supra. In the present cases, the plaintiff made such proof, and the carrier met it or attempted to meet it by evidence of careful handling throughout the shipment. A narrow issue of fact was thus raised. As to each car the question was presented whether the condition and appearance of the load as a whole upon its arrival and the number of damaged melons found in it were sufficient evidence of negligent handling to overcome the testimony to the contrary offered by the defendant. I think it was, and find as a fact that all of the cars in suit were negligently handled by the defendant, and that such negligence was the cause of damage to the melons.

■ Since both parties agree that when watermelons are loaded in bulk and transported by rail over long distances there will always be a certain amount of damage which can not be avoided even by the most careful handling, it is necessary to fix a norm or limit of tolerance, within which the presence of damaged melons in the cars will not amount to proof of negligence. To do so also meets the requirement of the rule of Schnell v. The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 197, 79 L.Ed. 373 (if it were applicable) to the effect that " * * * the carrier must bear the entire loss where it appears that the injury to cargo is due either to sea peril or negligent stowage, or both, and he fails to show what damage is attributable to sea peril." Even under the rule just stated it certainly would not be necessary to identify each particular melon and determine the precise cause of injury to it. Subtracting the tolerance or normal expectancy shows very well what damage is attributable to causes other than negligence. However, I doubt that the rule of the Vallescura case applies. I do not think that loading in bulk can be properly said to have caused any of the damage or that the injury was "due" or "attributable" to it. The cause of the damage was the carrier's negligence and the loading a condition which permitted it to operate on a larger scale.

■ The tolerance for ordinary non-negligent handling of bulk shipments I fix at twenty-five for the long, tougher type of melons and forty for the round, more fragile type. Applying this test, there is little doubt that all these cars received unnecessary shock, and, of course, the general appearance of the various carloads may be taken into consideration as well—the extent to which the loads had shifted and piled up toward one end of the car, with individual melons turned or upended.

The defendant's own expert suggested forty and sixty as a proper tolerance for unavoidable injury—undoubtedly too high a figure. But even on that basis, and moreover accepting the defendant's own count and check of damaged melons, more than half of the cars show damage in excess of the minimum, and consequently, on the defendant's own showing, furnish evidence of negligence. The plaintiff's allowance is considerably lower, and, of course, his checkers showed a very much greater amount of damage than the defendant's, but on any reasonable basis the fact of negligence seems to be very well established.

The remaining question is the amount of damages.

Both parties have accepted, as the measure of damages applicable to these cases, the difference between the fair market value of the damaged melons in the condition in which they arrived and their fair market value in the condition in which they should have arrived, at the time and place of delivery. The parties have also, by stipulation, supplied the Court with a formula to be used in determining the money loss under this rule, leaving the Court only to determine the total number of damaged melons for injury to which the defendant is responsible.

There is no possibility of reconciling the testimony of the checkers employed by the plaintiff and defendant respectively. One point of difference was that the plaintiff's witness included in his report of damaged melons those injured by cinders and soot. This, I think, must be eliminated as an item of damage. The melons had to be shipped in ventilated cars. There is no evidence to show what proportion of the cinders that sifted in came from the engines of the carriers charged with the goods, and there is no satisfactory showing that it is usual, customary or feasible to adopt measures or devices which would prevent the deposit of cinders in ventilated cars. But eliminating cinder damage will not go very far toward removing the discrepancy, as can be seen in the wide differences which appear in the estimates of damaged melons in the numerous cars as to which the plaintiff's witnesses did not report any cinder damage at all.

In general I have adopted the rule proposed in the defendant's fourteenth request for conclusion of law,[1] and have tried to fix a figure from which the items there set forth are excluded, except, of course, that I have allowed a normal expectancy of twenty-five and forty instead of forty and sixty as requested.

Allowance must be made for exaggeration and understatement by the respective witnesses. Neither report can be accepted at its full face value, although I do not mean to say that either is deliberately false or fraudulent. The source of a very large amount of the difference between the two lies in the judgment of the respective witnesses as to how large a bruise or crack affects the commercial value of the melons and consequently should be considered. Obviously there was substantial damage. If we take the figures from the defendant's report and apply the normal expectancy which I have found, damages upwards of a thousand dollars would follow. The proper amount is certainly much in excess of this. Not without some misgivings as to the accuracy of the figure, but exercising the best judgment I can, I fix the amount of damages at $3750 with interest as claimed.

The statements of fact and law contained in the foregoing discussion may be taken as special findings and conclusions.

Judgment may be entered for the plaintiff for $3,750 with interest.

[1] The defendant's request for conclusion of law No. 14 reads as follows: "In computing the number of melons, if any, which are found to be damaged by negligence of the carriers, there must be excluded therefrom

"(a) All diseased melons.

"(b) All melons bruised or broken because of negligence of the shipper, including those cut or bruised by end vents or door boards.

"(c) All decayed melons, except where there is proof that the decay resulted from a bruise caused by negligence of the carrier.

"(d) All melons damaged by cinders or cinder dust.

"(e) All melons gouged or damaged by improperly cut stems, or by knotty or misshapen melons adjacent to them.

"(f) The normal expectancy of cracked and bruised melons, viz: 40 Tom Watsons and 60 Cuban Queens or Dixie Belles per car."