Hillsborough, Jan. 2, 1951. } No. 3927.

Eulas Akerly & a. v. Railway Express Agency, Inc.

*Upton, Sanders & Upton (Mr. Richard F. Upton* orally), for the plaintiffs.

*Warren, Wilson, Wiggin & Sundeen (Mr. Wiggin* orally), for the defendant.

DUNCAN, J.  It is not disputed that in the transportation of the plaintiffs' goods the defendant, as a common carrier, was liable as an insurer unless the plaintiffs' losses resulted from causes which are excepted according to the rule of common law (*Moses* v. *Boston & Maine Railroad,* 24 N. H. 71, 84) or by agreement of the parties. Since the transportation involved was in interstate commerce, the rights of the parties are governed by federal law.  *Colby* v. *Express Co.,* 77 N. H. 548; *Bernardi Shows* v. *Railroad,* 86 N. H. 146; *Cincinnati & Tex. Pac. Ry.* v. *Rankin,* 241 U. S. 319; *Chicago & N. W. Ry.* v. *Whitnack Co.,* 258 U. S. 369.

All shipments involved were made upon the defendant's uniform express receipt which contained the following provisions:  "4. Unless

caused in whole or in part by its own negligence or that of its agents, the company shall not be liable for loss, damage or delay caused by— . . . b. The nature of the property, or defect or inherent vice therein."

According to established principles, the plaintiffs are entitled to recover if their goods were delivered to the defendant in good condition, and by it to the consignee in damaged condition, unless the defendant has established that the damage was due to a cause or causes within the exceptions stated in its contract with the plaintiffs. There was evidence that when delivered to the defendant the eggs were in good condition, and that when they were tendered to the consignee they were not. This was sufficient to establish a *prima facie* case for the plaintiffs. "It is sometimes said that the basis of the carrier's liability for loss of goods or for their damage in transit is 'presumed negligence' . . . But the so-called presumption is not a true presumption, since it cannot be rebutted, and the statement itself is only another way of stating the rule of substantive law that a carrier is liable for a failure to transport safely goods intrusted to its care, unless the loss or damage was due to [the act of God, the public enemy, the act of the shipper, or the nature of the goods.]" *C. & O. Ry. Co.* v. *Thompson Mfg. Co.*, 270 U. S. 416, 421, 422. See also, *Ledoux* v. *Ry. Expr. Agency*, 113 Vt. 480, 483, 484.

The defendant relies upon three propositions, in support of its motions for nonsuits and directed verdicts: First, that it was under no duty to furnish heat; second, that the damage to the eggs was due to the "nature of the goods"; and third, that its proof of due care conclusively rebutted the presumption of negligence arising from the establishment of a *prima facie* case. It is our opinion that none of these defenses operate to relieve the defendant of liability as a matter of law.

The eggs shipped by the plaintiffs were packed in fiber board cases and labeled "Hatching Eggs," in accordance with the requirements of the defendant's tariff. It is true, as the defendant points out, that the tariff contains no provision for special protective service such as heating; and this is the basis of its contention that it is without duty to furnish heat. To do so, it asserts, would violate statutory provisions relating to tariffs. 49 U. S. C. A. *s.* 6 (7). The plaintiffs contend that the defendant's tariff included a charge for heating. The tariff is silent with respect to this service. It contains no provision that it shall not be furnished (*Cf. Clemons Produce Co.* v. *Railroad*, 203 Mo. App. 100), and provides no option to obtain such service at a higher rate as is commonly done in the tariffs of carriers of freight by rail-

road. *Cf. Pacific F. & P. Co.* v. *Northern Pac. R. Co.*, 109 Wash. 481. The statute does not specifically require a separate statement of heating charges, and no claim is made that the Interstate Commerce Commission has required it. 49 U. S. C. A. *s.* 6 (1).

There was evidence that for many years the defendant had solicited the shipment of hatching eggs, holding itself out to the public as a carrier providing heated cars, and furnishing safe transportation regardless of the season. It also appeared that standard express cars carry steam pipes on the sidewalls, to which heat is furnished in the same manner as to the passenger and other cars of the trains of which they are commonly a part. The defense in this case was largely devoted to establishing that the cars in which the plaintiffs' eggs were carried were at all times heated to a degree sufficient to prevent freezing.

Since its early beginnings the express business has consisted of the carriage of valuables in the custody of a messenger. From the outset carriage has been by passenger train. See *In re The Express Companies*, 1 I. C. C. 349; *Express Cases*, 117 U. S. 1; *Wells Fargo & Co.* v. *Taylor*, 254 U. S. 175; *Lockwood* v. *Express Co.*, 76 N. H. 530. With the growth of the business to the transportation of the great variety of goods now commonly carried, the practice of heating cars has been recognized as a factor in the costs included in express rates. In *In re Express Rates*, 231 I. C. C. 471, 477, certain increased express rates upon eggs, fruit and fish were approved by the Interstate Commerce Commission upon the representation of the express companies that this traffic "should be required to bear its proportion of increased costs" because it was "perishable and therefore requires preferred handling." *Id.*, 478. From what is said *In re Perishable Freight Investigation*, 56 I. C. C. 449, 461-465, it is apparent that where no specific charge is made for protective service regularly furnished, none need be separately stated in the tariffs of a carrier. We conclude that no violation of the statute results where the service is available to all shippers without special charge. Such a service is not a "privilege" or special benefit. 49 U. S. C. A. *s.* 6 (7) *supra.* No departure from express provisions of the tariff is involved. *Cf. Am. Ry. Exp. Co.* v. *Am. Trust Co.*, 47 F. (2d) 16. We are accordingly of the opinion that the service of heating was implicit in the defendant's general tariff without specific mention, and that the defendant was under a duty to render the service which it undertook at the trial to show that it had furnished. *Lavagetto* v. *Ry. Express Agency*, 34 Wash. (2d) 578; *Hardesty* v. *Amer. Ry. Ex.*, 32 Del. 66. See *Charges for Protective Service*

*to Perishable Freight,* 274 I. C. C. 751; *Baker* v. *Railroad,* 74 N. H. 100, 109, 110; *Rolfe* v. *Railroad,* 69 N. H. 476, 477.

In the charge to the jury, the Trial Court gave the following instruction to which the defendant excepted: "In carrying hatching eggs the defendant would be under the duty to heat or cause to be heated its cars and storage rooms whenever reasonably necessary to prevent the eggs from being so frozen or chilled as to render them unsuitable for hatching." We think that this was an adequate statement of the defendant's duty and that there was no error in denying its motions for nonsuits and directed verdicts so far as they were based upon the ground that no such duty existed.

The second contention advanced by the defendant is founded upon the provision of the uniform express receipt that "unless caused in whole or in part by its own negligence . . . the company shall not be liable for loss [or] damage . . . caused by the nature of the property, or defect or inherent vice therein." It contends that the evidence establishes as a matter of law that the loss suffered by the plaintiffs was caused by the nature of the eggs.

In construing this exception consideration must be given to the reasons which gave rise to it. As established at common law it grew out of the nature of the liability to which it related. The liability of an insurer was imposed upon carriers because of their exclusive control of goods shipped, and the inability of the shipper to protect the goods while in the custody of the carrier, or to establish the cause of damage which then occurred. On the other hand, it was considered unjust that carriers should be thus liable for damage arising from causes which they in turn were powerless to prevent, regardless of the care exercised by them. Thus the carrier was relieved from liability for damage due to "explosion . . . fermentation, putrefaction, dissolution, spontaneous combustion, growth, decay, disease, or death" (*Rixford* v. *Smith,* 52 N. H. 355, 361), and to the vicious propensities or inherent vice of livestock, provided the carrier's negligence did not contribute to the loss. 9 Am. Jur. 864; *Balto. & Ohio R. Co.* v. *Dever,* 112 Md. 296; *Rixford* v. *Smith, supra; Faucher* v. *Wilson,* 68 N.H. 338. Hence it was said that a carrier is not an insurer against the "inherent natural tendency of perishable property to depreciate or decay." *Hardesty* v. *Amer. Rail. Ex.,* 32 Del. 66, 69, *supra.*

The question is whether the freezing of eggs must be said to come within this exception. It may be recognized that eggs by their nature are susceptible to freezing; but eggs do not freeze unless exposed to freezing temperatures. Natural forces from without must act upon

the egg in order to produce the result complained of. Unlike the fermentation of molasses (*Faucher* v. *Wilson, supra*), disease of strawberries (*Railway Express Agency, Inc.* v. *Robinson & Company*, 184 Ark. 660), decay of lettuce (*C. & O. R. Co.* v. *Timberlake*, 147 Va. 304), or loss from the vicious or unruly nature of animals, the freezing of eggs results from nothing "inherent" in the nature of the goods; nor is it something which must necessarily be said to proceed from within the property transported, against which the carrier in the exercise of care is powerless to provide. On the contrary it is a result against which the carrier may, and in this case strongly asserts that it did, provide. "The freezing . . . is usually, if not always, caused by . . . negligence, rather than by any inherent nature. . . . " *Packet Co.* v. *Long*, 14 Oh. Cir. Ct. (N. S.) 225, 228.

As the case was submitted to the jury, the issue of whether the damage to the eggs resulted solely from "the nature of the goods" was left to the determination of the jury. The defendant was entitled to no more favorable application of the law.

Finally, in support of its motions, the defendant contends that its due care was conclusively established, and that there was no issue for the jury in the absence of proof of specific negligence as distinguished from the "presumption" arising from the plaintiffs' *prima facie* case. This argument appears to us to stem from a misconception of applicable rules. As the court pointed out in *C. & O. Ry. Co.* v. *Thompson Mfg. Co., supra*, the presumption is a "rule of substantive law that a carrier is liable . . . unless the loss or damage is due to one of the specified causes." The defendant may relieve itself from the effect of the presumption only by showing that the loss resulted from an excepted cause. *Galveston H. & S. A. Ry. Co.* v. *Wallace*, 223 U. S. 481, 492; *Hardesty* v. *Amer. Ry. Ex.*, 32 Del. 66, 71, *supra*. Proof of due care is not enough. It must appear both that the excepted cause was the cause of the loss, and that the defendant's negligence did not contribute to it. This is apparent from the terms of the receipts issued by the defendant.

As was said in *C. & O. R. Co.* v. *Timberlake*, 147 Va. 304, *supra*: "In order to defeat [the plaintiffs'] right of recovery the burden is on the defendant to disprove these facts [establishing the *prima facie* case] or to prove that the loss or damage was proximately and exclusively due to one of the five excepted causes . . . (*p.* 309). This presumption could not be overcome, as a matter of law, by proof which tended to show that the defendant was not in fact negligent, unless it was sufficient to prove that the damage was due proximately and

exclusively to the inherent nature of the [goods]. In such a situation the issue of negligence and whether the presumption of negligence arising from the damaged condition of the [goods] had been rebutted, were questions for the jury" (*pp.* 312-313). See also, *Saliba* v. *New York Central R. R. Co.*, 101 Vt. 427.

Ordinarily proof of care on the part of the defendant and evidence that an excepted cause accounted for the loss presents an issue for the jury. *C. & O. R. Co.* v. *Timberlake, supra.* The defendant relies heavily upon a line of Arkansas decisions in which the evidence was held sufficient to entitle the carrier to a directed verdict. Typical of these cases is *Railway Express Agency, Inc.* v. *Robinson & Co.*, 184 Ark. 660, *supra.* It there appeared from the defendant's evidence that damage occasioned to strawberries was due to a rot which was not perceptible upon delivery to the carrier, and that the carrier exercised due care in the handling and refrigeration of the shipment. It was held that this evidence overcame the presumption of liability arising from the plaintiff's proof, and that a verdict should have been directed for the defendant. This disposition seems not inconsistent with principles heretofore discussed. Having established that the shipment fell within an exception to its common law liability, and that its actual negligence did not contribute to the loss, the defendant succeeded in establishing as the sole cause of the loss, a cause for which it was not liable.

Other Arkansas decisions relied upon by the defendant proceed upon the same ground, or upon a theory adopted by some state courts which in effect holds perishable fruits and vegetables to be within the exception to common liability as a matter of law, so that the carrier is charged only with the burden of showing due care. See *Southern Pac. Co.* v. *Itule*, 51 Ariz. 25; Annotation, 115 A. L. R. 1274. There is no indication that the latter theory has been adopted by the federal courts, and the *Itule* case intimates that it has not (51 Ariz. 32).

The case before us is not governed by the principles applied in the cases cited. The plaintiffs' loss was not from spoilage of perishable goods, but from freezing. It cannot be said as a matter of law that the tendency of eggs to freeze is so far akin to the tendency of vegetables to spoil or decay that their loss from this cause must be attributed to their inherent nature. Unlike loss from decay, loss from freezing is avoidable by suitable precaution.

It follows therefore that if the plaintiffs' loss was found by the jury not to be due solely to the inherent nature of the eggs, it was necessarily due either to breach of duty by the carrier, or to the act of the

shipper. The issue became primarily one of credibility. The eggs were frozen while they were in the custody of either the plaintiff or the defendant. An earlier Arkansas case, *Mo. Pac. R. Co.* v. *Bell*, 163 Ark. 284, *cert. den.* 266 U. S. 625, recognized a parallel situation; "It is claimed that the testimony for appellant [railroad] overcomes any *prima facie* case made by appellees. We cannot agree. . . . It is true that the appellant introduced testimony tending to show that the car was kept closed . . . and that the potatoes would not have frozen. . . . The jury, however, might not have believed the witnesses in this respect. The potatoes were badly frozen . . . and it is evident that all the witnesses cannot be telling the truth about the matter."

The further contention of the defendant is that if the jury found that the loss was due to the inherent nature of the eggs, so that the presumption of liability did not apply, there was no evidence of negligence upon which it could properly be found liable. This contention cannot be accepted. It is true that the issue would thereupon become one of actual negligence, rather than of liability as an insurer. But the plaintiffs' *prima facie* case was upon the facts of this case likewise evidence of negligence. "'Where the thing is shown to be under the management of the defendant . . . and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant that the accident arose from want of care.'" *McCourt* v. *Travers*, 87 N. H. 185, 186. See also, *Schnell* v. *The Vallescura*, 293 U. S. 296, 305; *Bronstein* v. *Baltimore & O. R. Co.*, 29 F. Supp. 837.

The cases were properly submitted to the jury under adequate instructions. For reasons already indicated, the defendant's requests for instructions that it had no duty to furnish heated cars or warehouse facilities were properly denied. Its duty in both respects was identical. *Lavagetto* v. *Ry. Express Agency*, 34 Wash. (2d) 578, *supra*. See also, 172 A. L. R. 802. Its third request was also properly denied. Under the federal law, the defendant's liability was that of an insurer. It was not restricted to liability for failure to use due care unless the loss was due to an excepted cause. *Adams Express Co.* v. *Croninger*, 226 U. S. 491, 509.

*Judgment on the verdicts.*

LAMPRON, J., did not sit: the others concurred.