Belknap,
No. 4355.

ROGER H. BEANE *v.* JOHN R. PERLEY *& a.*

Argued November 4, 1954.

Decided December 15, 1954.

*Robert P. Tilton* (by brief and orally), for the plaintiff.

*Sulloway, Jones, Hollis & Godfrey* and *Irving H. Soden* (*Mr. Soden* orally), for the defendants.

BLANDIN, J. The first question which we will consider is whether there was evidence to submit to the jury on the issue of whether the defendant John R. Perley, a general practitioner, was negligent in his post-operative care and treatment of the plaintiff and especially because he diagnosed the ailment as neuritis instead of arachnoiditis which it was later proven to be. The undisputed testimony was that arachnoiditis is a rare and complicated condition of generally unknown origin occurring only once in about 10,000 cases and that the defendant Perley had never in his twenty-five years' experience seen such a case. Neuritis on the other hand is a common disease, and after deciding that this was what was causing the plaintiff's suffering, the defendant treated him for it. By the overwhelming weight of authority including this state, the question whether a physician uses ordinary care must depend upon expert testimony. *April* v. *Peront*, 88 N. H. 309, and authorities cited; 7 Wig. Ev. (3rd *ed.*), s. 2090(a); 70 C. J. S. 1006. The only exception to this rule is where the proof of negligence rests on matters of which the ordinary person may be expected to have knowledge. *Mehigan* v. *Sheehan*, 94 N. H. 274; *Carbone* v. *Warburton*, 22 N. J. Super. 5, affirmed 11

N. J. 418. In arguing that the issue of the defendants' negligence was properly submitted to the jury, the plaintiff relies principally on a question put to the defendant Perley relating to his diagnosis of neuritis: "If there are examinations that can be given to assist in the diagnosis, does the patient have a right to expect that those examinations will be given, Doctor?" To this, after counsel had explained that by "right" he meant "Under the standard of care prevalent in this community," the doctor answered, "Yes." It being conceded that certain examinations or tests were not made, the plaintiff argues from this that in the circumstances here there was expert testimony from the defendant himself from which the jury could find that in failing to make the tests he did not exercise the care required by our law. *Michael* v. *Roberts,* 91 N. H. 499. However, we cannot isolate this single question and answer from its context. The defendant testified that he made his diagnosis to "[his] own satisfaction" on the basis of an examination, a number of observations, and the plaintiff's past history which included a recent virus infection. It was the doctor's opinion that the neuritis was an after result of the virus infection. He asserted that further tests to determine that the plaintiff had neuritis were "not indicated" that they were painful, unnecessary, inadvisable, and that in his opinion they would have told him no more than he already knew. The defendant also testified, "You don't need an examination to determine neuralgia and neuritis. The pain tells you that. The examination might tell you the distribution of it or where the nerves come from that are giving the pain." It seems obvious that reasonable persons could not fairly construe the doctor's answer to counsel's interrogatory to mean that a physician must at his peril in all instances subject his patient to useless and painful tests before making a diagnosis regardless of the circumstances. The question whether they should be given must depend on the facts of each case and is obviously one for expert medical testimony. *April* v. *Peront,* 88 N. H. 309.

The situation here is distinguishable from that in *Mehigan* v. *Sheehan,* 94 N. H. 274, upon which the plaintiff relies. In that case one issue depended upon whether a physician "forgot to treat for the breasts after the miscarriage" (*Id.,* 276) in regard to which there was evidence the defendant himself stated, "I forgot. I should have done something about that." *Id.* 277. The other question was whether "two alleged telephone calls were made on Sunday morning" (*Id.,* 276) and if so, whose fault it was that the

defendant did not know about them. As the opinion states, these matters were plainly "within the intelligent comprehension of a jury" (*Id.*, 276) and furnished a sound basis for the verdict. Cases in other jurisdictions which hold a view similar to that in the *Mehigan* case also seem to rest upon the proposition that the issues depend upon the facts with which ordinary persons are acquainted and are distinguishable from the situation before us.

We are aware of the force of the argument that the difficulty in procuring medical testimony in malpractice cases sometimes results in injustice and should make courts more lenient in their requirements as to expert testimony. See *Carbone* v. *Warburton*, 22 N. J. Super. 5, affirmed 11 N. J. 418; *Steinke* v. *Bell*, (N. J. Super.) 107 A. (2d) 825. Indeed, in some jurisdictions the Legislature by statute has endeavored to alleviate the situation. Mass. Gen. Laws, (Ter. *ed.*) *c.* 233, *s.* 79C, as inserted by Laws 1949, *c.* 183, *s.* 1. However, we do not believe the way to correct one evil is by creating another and permitting juries to reach verdicts by a speculative process which would be peculiarly apt to produce miscarriages of justice. Whether the remedy for such difficulty as may exist should lie within the profession itself or in legislative action is not for us to say, but in any event, we do not believe the courts should pervert a sound legal principle to reach what may appear to be a desirable result in a particular case. Our conclusion is that in this case expert testimony was required in order for the jury to fairly and intelligently determine whether there was negligence in post-operative care and treatment of the plaintiff. There being no such testimony, the defendants' motion for a nonsuit on this count should have been granted.

The plaintiff's exception to the granting of the nonsuit on the claim that there was negligence in prescribing spinal anesthesia does not require extended consideration. Counsel has advanced no substantial argument nor would the record sustain a ruling that this was a matter not requiring expert testimony and since none was forthcoming to indicate that there was any negligence in choosing and administering the spinal anesthesia, the exception must be overruled.

The conclusions reached render unnecessary consideration of other exceptions and the order is

*Judgment for the defendants.*

All concurred except Kenison, C. J., who was of the opinion that on all the evidence in the whole record, the question of defendants' negligence was properly submitted to the jury.