Rockingham
No. 6424

THEODORE SCOTT & *a.*

v.

J. J. BRADY & SONS, INC.

February 28, 1973

*Perkins, Holland, Donovan & Beckett (Mr. William H. M. Beckett* orally) for the plaintiff.

*Devine, Millimet, Stahl & Branch (Mr. Shane Devine* orally) for the defendant.

GRIFFITH, J. This is a suit against a common carrier to recover damages to five pure standardbred trotting horses, allegedly sustained during the transportation of the animals by the defendant from Deland, Florida to Liberty Bell Park, Pennsylvania, on March 20, 1965. The plaintiffs' first count was based on breach of the contract of carriage. The second and third counts alleged negligence in the handling of the defendant's truck. Prior to the jury trial the court ruled that the plaintiffs had the burden to prove all three counts of its declaration and noted the plaintiffs' exception as to the second and third counts. At the close of the plaintiffs' evidence the defendant moved for a nonsuit. The Court, *Grant,* J., allowed the motion and saved the plaintiffs' exception.

Federal law must be applied to the facts presented in the record as this case arises from the carriage of goods in interstate commerce. *Akerly v. Railway Express Agency,* 96 N.H. 396, 77 A.2d 856 (1951); *Adams Express Co. v. Croninger,* 226 U.S. 491, 57 L. Ed. 314, 33 S. Ct. 148 (1912). The Carmack amendment to the Interstate Commerce Act makes any interstate common carrier liable "for the full actual loss, damage, or injury" which it causes to the transported goods. 49 U.S.C.A. § 20(11). This legislation codifies the common-law rule that a carrier is liable "for all damage to the goods transported by it, unless it affirmatively shows that the damage was occasioned by the shipper, acts of God, the public enemy, public authority or the inherent vice or nature of the commodity". *Secretary of Agriculture v. United States,* 350 U.S. 162, 100 L. Ed. 173, 76 S. Ct. 244 (1955). In order to establish

a prima facie case the plaintiffs alleged and under the court's ruling properly undertook to prove delivery of the property to the carrier in good condition, its arrival in damaged condition and the amount of the damages. *Chesapeake & O. Ry. v. A. F. Thompson Mfg. Co.,* 270 U.S. 416, 70 L. Ed. 659, 46 S. Ct. 318 (1925); *Akerly v. Railway Express Agency, supra* at 398, 77 A.2d at 858. Once the shipper establishes a prima facie case, "the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *Missouri Pac. R. v. Elmore & Stahl,* 377 U.S. 134, 12 L. Ed. 2d 194, 84 S. Ct. 1142 (1964). This shift in the burden of proof places upon the carrier not only the burden of going forward with evidence of its own due care but also the risk of nonpersuasion. *Super Serv. Motor Freight Co. v. United States,* 350 F.2d 541 (6th Cir. 1965); *Continental Can Co. v. Eazor Express, Inc.,* 354 F.2d 222 (2d Cir. 1965).

The nonsuit was properly granted if the plaintiffs failed to produce evidence from which a jury could find that the horses were delivered to the carrier in good condition and arrived in damaged condition. In determining this issue "the evidence and all reasonable inferences therefrom must be construed most favorably to the plaintiff". *Dubreuil v. Dubreuil,* 107 N.H. 519, 229 A.2d 338 (1967); *Plume v. Couillard,* 104 N.H. 267, 184 A.2d 452 (1962).

Plaintiffs presented evidence from which a jury could find that plaintiffs' five horses were loaded on a truck in Florida with four horses belonging to other owners. There was testimony that the plaintiffs' horses were then in good condition. A groom who traveled with the horses to their destination in Pennsylvania testified to a "rough" ride from which the horses might have sustained injuries. The fatal defect in the plaintiffs' case is that only by speculation and conjecture could the subsequent condition of the horses be found to have existed at the end of their transportation.

The groom testified that the horses were stiff upon arrival but that this was usual after a trip. One of plaintiffs' horses had a few scars but no injury or damage complaint is based upon this condition. A trainer, who first observed the horses

two or three days after their arrival in Pennsylvania, observed a small lump on the back of one of the horses which he thought might have been caused by the transportation. The same trainer testified that several of the horses after the trip north had lost their coordination and rhythm but when asked if he had an opinion why he answered that he didn't really know.

The plaintiff owners did not see the horses until some ten days after their arrival. Plaintiff Theodore Scott's testimony would have permitted a finding that the two horses which had not previously raced never did race and that the other three raced with meagre success in the two or three years following the trip complained of.

The only expert testimony in the case came from Dr. Robert Orcutt, a veterinarian who treated two of the horses involved in July some four months after their transportation to Pennsylvania. In his opinion, both horses then suffered from pinched nerves which could possibly be the result of their rough trip but he could not say it was likely or probable.

This testimony was insufficient to permit a jury to determine whether the later complaints about the horses were related to their transportation by the defendant. The plaintiff owners testified that "race horses practically all the time have some problem." Nothing in the case permitted the inference that common knowledge would render unnecessary the production of evidence. *Mehigan v. Sheehan,* 94 N.H. 274, 275-76, 51 A.2d 632, 633 (1947). Obviously expert testimony was required to relate the trip to the subsequent difficulties of the horses. *Beane v. Perley,* 99 N.H. 309, 109 A.2d 848 (1954); *Bentley v. Adams,* 100 N.H. 377, 128 A.2d 202 (1956).

The groom, trainer, and owner testified to nothing in the physical appearances of the horses immediately after the trip indicating any injury and based their complaints solely on the horses' lack of coordination and the inability to train them to race successfully. Under proper circumstances a non-veterinarian may be qualified to give an opinion on the cause of an animal's injury or malady. *State v. Vance,* 119 Vt. 268, 125 A.2d 800 (1956); Annot., 49 A.L.R.2d 932, 952 (1954). However no attempt was made to qualify any of these witnesses as experts and any opinions they expressed never rose

above the level of guesses.

The opinion of the veterinarian that the condition he found in two of the horses four months after the trip "possibly" arose from the trip furnished no basis for a jury verdict. *Jolicoeur v. Conrad,* 106 N.H. 496, 213 A.2d 912 (1965); *see Glass-Tite Industries v. Spector Freight Systems,* 102 R.I. 301, 230 A.2d 254 (1967).

*Exceptions overruled;*
*judgment for defendant.*

All concurred.