Rockingham
No. 6546

MARY L. MUZZY v. ROCKINGHAM COUNTY TRUST COMPANY

September 28, 1973

*Robert Shaw* and *Joseph A. Lowther (Mr. Lowther* orally) for the plaintiff.

*Soule & Leslie ( Mr. Lewis F. Soule* orally) for the defendant.

Kenison, C.J. The principal issue in this case is whether the trial court properly granted the defendant's motion for nonsuit in an action to recover damages for the alleged conversion by the defendant bank by its retention of certain stock certificates belonging to the plaintiff. The standard of review is whether the evidence and all reasonable inferences therefrom, construed most favorably to the plaintiff, would permit a jury to find in her favor. *Scott v. J.J. Brady & Sons, Inc.,* 113 N.H. 65, 67, 302 A.2d 108, 109 (1973); *Dubreuil v. Dubreuil,* 107 N.H. 519, 520, 229 A.2d 338, 339 (1967).

The basic facts are not in dispute. On or about June 20, 1969, a house was conveyed to the plaintiff by her husband during a period when his business was financially insecure. The conveyance was subject to a purchase and sale agreement, signed by both the plaintiff and her husband, to sell the house to a third party in July of 1969. On June 26, 1969, the plaintiff and her husband jointly executed a 90-day note

for $5000 to the defendant bank for the purpose of assisting the husband in his business. They deposited, as collateral, certificates of various common stocks, most of which were owned by the plaintiff, but some held jointly with her husband. On Friday, July 18, 1969, the plaintiff received a draft payable to both her and her husband in the amount of approximately $5442 for the sale of the house. On the same day, after endorsing the name of her husband on the back of the draft without his authorization, the plaintiff endorsed her own name, went to an official of the defendant bank and tendered the draft for the purpose of discharging the note. The official accepted the draft in the belief that the husband's endorsement was proper and indicated that the note would be discharged despite the prematurity in payment. Since the amount of the draft was in excess of that due on the note, arrangements were made for the disposition of the excess. The parties agreed that the stock certificates would be returned on the following Monday because it was deemed prudent to leave them in the bank vault over the weekend. Later on July 18 the plaintiff's husband learned of the unauthorized endorsement and called the official in the bank, stating that he had not endorsed the draft. On the following Monday the defendant bank delivered the draft containing the plaintiff's endorsement to her husband, who apparently negotiated the instrument for his own purposes. The defendant bank then informed the plaintiff that it had refused to accept the draft in the discharge of the debt and continued to hold the stock certificates as collateral.

After the plaintiff and her husband failed to pay the note when it became due, the defendant bank brought separate actions on the note against them. The plaintiff sued the defendant bank in the present action, claiming that she, as owner of her home, was exclusively entitled to the draft representing the proceeds of the sale. The bank in turn brought a third party action against the plaintiff's husband. The four actions were consolidated and tried by jury. After the presentation of the plaintiff's evidence, the trial court granted the defendant's motion for nonsuit in the present action and a motion for directed verdict by the plaintiff's husband in the third

party action. The husband admitted liability on the note, and the trial court directed a verdict in favor of the bank. The jury found for the plaintiff in the action against her on the note, thus relieving her of responsibility. The plaintiff's exception to the granting of the motion for nonsuit was reserved and transferred by *Mullavey*, J.

Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel. Restatement (Second) of Torts § 222A(1) (1965); 1 F. Harper & F. James, The Law of Torts § 2.8-.10 (1956); *see Pacific & Atlantic Shippers v. Schier*, 109 N.H. 551, 553, 258 A.2d 351, 353 (1969). The crucial question of this case is whether the bank's transfer of the draft to the husband was so inconsistent with the plaintiff's rights in the instrument as to be actionable. In resolving this question, we consider, among other factors, the extent and duration of the actor's exercise of dominion and control, his intent to assert a right in fact inconsistent with the other's right of control, and his good faith. Restatement (Second) of Torts § 222A(2) and Comment *d* (1965); W. Prosser, Torts 81 & n.86 (4th ed. 1971).

The plaintiff transferred the draft to the bank for the purpose of discharging the outstanding note and thus regaining possession of her collateral. When it became apparent that the husband had not authorized his endorsement on the draft, the bank correctly viewed the instrument as being defective on the authority of RSA 382-A:3-404 (1) which states that "[a]ny unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it . . . ." and RSA 382-A:3-116 which states that "[a]n instrument payable to the order of two or more persons . . . (b) . . . may be negotiated, discharged or enforced only by all of them". Because of the plaintiff's misrepresentation, it rescinded its acceptance of the draft in discharge of the note and retained the collateral as security.

Although the plaintiff contends that she was exclusively entitled to the draft, both the plaintiff and her husband were

named payees on the face of the instrument. The Restatement (Second) of Torts § 234 (1965) states that "[a] bailee, agent, or servant who makes an unauthorized delivery of a chattel is subject to liability for conversion to his bailor, principal, or master unless he delivers to one who is entitled to immediate possession of the chattel." *See Hett v. Boston & Maine Railroad*, 69 N.H. 139, 44 A. 910 (1897); *Gove v. Watson*, 61 N.H. 136 (1881); W. Prosser, Torts 88 & n.57 (4th ed. 1971); Annot., 43 A.L.R. 149, 157 (1926). The bank was in a position equivalent to that of a bailee and was confronted with a situation where it could have transferred the check either to the plaintiff or her husband. We cannot say that its decision to transfer the instrument to the husband was actionable.

The defendant's retention of the securities as collateral was proper prior to the verdict in favor of the plaintiff on the note. We understand that the securities have been made available to the plaintiff and the order is

*Plaintiff's exception overruled.*

All concurred.